KEMNITZER, BARRON & KRIEG, LLP
KRISTIN KEMNITZER        Bar No. 278946
ADAM J. MCNEILE          Bar No. 280296
MALACHI J. HASWELL       Bar No. 307729
1120 Mar West St., Ste C2
Tiburon, CA 94920
Telephone: (415) 632-1900
Facsimile: (415) 632-1901
adam@kbklegal.com
kristin@kbklegal.com
kai@kbklegal.com

Attorneys for Plaintiff BENJAMIN MARTINEZ

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN MARTINEZ,<br><br>        Plaintiff,<br><br>    vs.<br><br>SUNNOVA ENERGY CORPORATION; and DOES 1 through 20, inclusive,<br><br>        Defendants. | **Case No.**<br><br>**COMPLAINT FOR:**<br><br>**I.**   **FRAUDULENT CONCEALMENT;**<br>**II.**  **NEGLIGENCE;**<br>**III.** **THE CONSUMERS LEGAL REMEDIES ACT (CIVIL CODE §1750, *ET SEQ.*);**<br>**IV.** **VIOLATIONS OF THE ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT (WELFARE & INSTITUTIONS CODE §15610.07, *ET SEQ.*);**<br>**V.**  **VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CIVIL CODE §1788, *ET SEQ.*);**<br>**VI.** **VIOLATIONS OF THE HOME SOLICITATION SALES ACT (CIVIL CODE §1689.5, *ET SEQ.*);**<br>**VII.** **VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §7150, *ET SEQ.*; and**<br>**VIII.** **VIOLATIONS OF THE UNFAIR COMPETITION LAW (BUSINESS & PROFESSIONS CODE §17200, *ET SEQ.*)**<br><br>Unlimited Civil Case<br><br><u>JURY TRIAL DEMANDED</u> |

## INTRODUCTION

1.      This case involves a scheme in which Defendant SUNNOVA ENERGY CORPORATION ("SUNNOVA") partners with unscrupulous door-to-door salesmen and contractors like Greenspire LLC to target vulnerable consumers for the fraudulent sale and onerous "financing" of solar panels. Plaintiff BENJAMIN MARTINEZ ("Plaintiff") is an elderly monolingual Spanish speaker who fell victim to SUNNOVA and its agents' and representatives' fraudulent scheme.

2.      Plaintiff is a 78-year-old monolingual Spanish speaker. He has the equivalent of a second-grade education. At the time Greenspire door-to-door salesmen, acting as agents for SUNNOVA, showed up at Plaintiff's home unannounced, his wife was in the ICU for a serious disease. Plaintiff cannot independently use a computer and does not know how to access email. He has no comprehension of how to access email without assistance. He does not know how to sign documents electronically.

3.      Defendant's door-to-door salespeople exploited Plaintiff's vulnerabilities. They lied to Plaintiff and told him that his energy bills would drop to $105 per month if he allowed them to install their solar panels and battery, which they insisted would be done free of charge. They then took his personal information from an energy bill he provided to them, and, unbeknownst to Plaintiff, created an email address to which Plaintiff had no access, forged his signature on a SUNNOVA contract, and obligated him to a 25-year loan totaling $48,272.37 for solar panels and a back-up battery (the "Solar Panel System").

4.      Following the install of the Solar Panel System that SUNNOVA agents had represented were free and were necessary to lower Plaintiff's monthly energy bill, Plaintiff began receiving debt collection calls. Plaintiff at first believed these calls were from his utility company, but later discovered they were from SUNNOVA. Plaintiff had never heard of SUNNOVA because he had never received or signed a

contract with any party.

5.     To this day, despite lawfully cancelling any and all alleged contract(s), SUNNOVA continues to demand monthly payments from Plaintiff on contracts to which he never agreed.

6.     Plaintiff brings this action for Fraudulent Concealment, Negligence, and violation of the Consumers Legal Remedies Act ("CLRA"), Civ. Code §1750, *et seq.*; the Elder Abuse and Dependent Adult Civil Protection Act ("EADACPA"), Welf. & Inst. Code § 15610.07 *et seq* ; the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Civ. Code §1788, *et seq.*; the Home Solicitation Sales Act ("HSSA"), Civ. Code §1689.5, *et seq.*; Bus & Prof. Code §7150 *et seq.*; the Unfair Competition Law ("UCL"), Bus & Prof. Code §17200, *et seq.* and to obtain actual, statutory, civil, treble, and punitive damages for the harm that he has suffered. Plaintiff also seeks a public injunction against SUNNOVA, to enjoin its unlawful, unfair, and fraudulent conduct.

## PARTIES

7.     Plaintiff is an individual over the age of 18 years. At all times relevant herein, Plaintiff was, and currently is, a resident of the State of California, County of Riverside.

8.     Defendant SUNNOVA is, and at all times relevant herein was, a Delaware corporation with its principal place of business in Texas, that at all times relevant herein was licensed to do business and was conducting business in California.

9.     At all times relevant hereto, SUNNOVA extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making SUNNOVA a creditor within the meaning of TILA, 15 U.S.C. § 1602(g).

//

## DOE DEFENDANTS

10.     Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, pursuant to §474 of the California Code of Civil Procedure. Nonetheless, Plaintiff alleges that Defendants DOES 1 through 20, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein and are legally liable to Plaintiff. Plaintiff will seek leave to amend this complaint to set forth the true names and capacities of the DOE Defendants, together with appropriate charging allegations, if and when ascertained.

## THE HOLDER RULE

11.     All claims and defenses that Plaintiff has against Greenspire arising out of the solar panel purchase transaction are also valid against SUNNOVA, because SUNNOVA is the holder of any alleged consumer credit contract. Given the violations of law alleged below, and the Federal Trade Commission Holder in Due Course rule, 16 C.F.R. §433, *et seq*., which subjects the holder of a consumer credit contract to all claims and defenses of the consumer against the seller, SUNNOVA is subject to all claims and defenses Plaintiff may have against Greenspire. Specifically, SUNNOVA's contract is required to include the following language:

> NOTICE
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS THEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

12.     Nevertheless, despite being subject to Holder in Due Course rule, SUNNOVA fails to include the requisite language in its contract. By failing to

include the requisite language in its form contract, SUNNOVA systematically misleads customers as to the status and the obligations of their legal rights under the contract.

13.     As such, SUNNOVA's failure to include holder language is, in and of itself, a violation of the FTC's Holder in Due Course rule and the UCL, Bus & Prof. Code §17200, *et seq.* Because SUNNOVA's violation of the law is for its own conduct and is not derivative of any conduct by Greenspire or its agents, the FTC Holder Rule's cap on damages does not apply.

## AGENCY

14.     Plaintiff is informed, believes and thereon alleges that at all times mentioned herein, each Defendant, whether actually or fictitiously named, was the principal, agent (actual or ostensible), or employee of each other Defendant. In acting as such principal or within the course and scope of such employment or agency, each Defendant took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein.

15.     Furthermore, Plaintiff is informed, believes and thereon alleges that at all times mentioned herein Greenspire employees and/or representatives act as agents and at the direction of SUNNOVA as part of the SUNNOVA Program described below.

## JURISDICTION AND VENUE

16.     This Court has federal diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a) in that the matter in controversy exceeds $75,000 and is between citizens of different states.

17.     The Court has personal jurisdiction over Defendants because they purposefully availed themselves of the privilege of conducting activities in California and directed their activities into this forum; Plaintiff's claims arise out of Defendants' forum-related activities; and the exercise of jurisdiction comports

with fair play and substantial justice.

18.     Venue is proper in the Central District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

## The Consumer Solar Panel Industry

19.     The solar industry is one of the fastest growing global industries, with a global valuation of $154.47 billion in 2020, and estimated to balloon to over $1 trillion by 2028.[1] Though green energy in theory is a noble goal, the exponential growth in the industry has led to an exponential growth of fraud, with little to no oversight.

20.     SUNNOVA's business model ratifies the fraud perpetrated by its agents such as Greenspire. As SUNNOVA are well aware, the solar panel installation business is heavily populated with deceptive and dishonest contractors targeting, preying upon, and ripping off vulnerable consumers.[2]

---

[1] *See Solar Photovoltaic Market Size [2021-2028] USD 1,00.92 Billion*, Apr. 25, 2022, https://finance.yahoo.com/news/solar-photovoltaic-market-size-2021-120400068.html (last visited on October 19, 2022).

[2] *See, e.g.*, *U.S. v. Vivint Smart Home, Inc.*, Case No. 2:21-cv-00267-TS (D. UT 2021) (stipulated order for permanent injunction and civil penalty judgment for Vivint's violation of the FTC's "Red Flags Rule" involving identity theft); *New Mexico v. Vivint Solar, Inc.*, Case No. D-202-CV-201801936 (lawsuit by New Mexico Attorney General alleging solar panel installation contractor engaged in unfair and deceptive practices including fraudulently inducing consumers to enter into twenty-year power purchase agreements which would purportedly save them significant amounts of money); *State of Minnesota, by its Attorney General Keith Ellison v. Brio Energy LLC et al.*, Hennepin County, Case No. 27-CV-22-6187 (lawsuit by Minnesota Attorney General against four Utah-based solar panel companies alleging they lied about their relationship with Minnesota utilities, misrepresented financial benefits of purchasing solar panels, and tricked consumers into signing binding sales contracts and loan agreements); Alana Samuels, *Rooftop Solar Power Has a Dark Side*, TIME, September 26, 2023, available at https://time.com/6317339/rooftop-solar-power-failure/ (last visited October 2, 2023); Bailey Schulz, *New Jersey Solar Company Allegedly Pressured Vulnerable Populations Into Contracts for a 'Shoddy Product'*, USA TODAY, April 12, 2023, available at https://www.usatoday.com/story/money/2023/04/10/vision-solar-panel-lawsuit/11600307002/ (last visited on September 22, 2023) (detailing class action suit filed in New Jersey on behalf of plaintiffs from five States alleging that solar panel leasing company Vision Solar salespeople used high-pressure sales tactics to convince homeowners - including low-income, disabled and elderly individuals - to purchase or lease solar panel systems); Press Release, Office of the Attorney General of the State of Kentucky, *Attorney General Cameron Leads Nine States in Urging Five Solar Lender Companies to Suspend Financial Obligations For Pink Energy Consumers*, November 22, 2022, available at https://www.kentucky.gov/Pages/Activity-stream.aspx?n=AttorneyGeneral&prId=1287 (last visited October 1, 2023); Press Release, Office of the Attorney General State of Idaho, *Attorney General Issues Tips for Homeowners on Solar Installations*, February 21, 2022,

## SUNNOVA's Scheme

### A. SUNNOVA's Partner Program

21.    The deceptive sales tactics of solar panel installation contractors like Greenspire are enabled, facilitated, and ratified by the large financing companies like SUNNOVA that fund the projects. The industry is rife with scams due to the deputization of door-to-door salespersons tasked with signing vulnerable consumers up for tremendously expensive, multi-decade contracts and loans.[3]

---

available at https://www.ag.idaho.gov/newsroom/attorney-general-issues-tips-for-homeowners-on-solar-installations/ (last visited September 22, 2023) (reporting the Idaho AG issued a consumer alert regarding solar companies' use of misleading sales tactics through door-to-door sales and social media advertisements); Lauren Trager, *Missouri Attorney General Sues Solar Panel Company After Customer Complaints, News 4 Investigation*, KMOV, September 30, 2022, available at https://www.kmov.com/2022/10/01/missouri-attorney-general-sues-solar-power-company-after-customer-complaints-news-4-investigation/ (last visited September 22, 2023) (reporting that former Missouri Attorney General and now US Senator Eric Schmitt sues Pink Energy for making false promises and misrepresentations to consumers, deception, and concealing material facts); Press Release, Office of the Attorney General of Connecticut, *Attorney General Tong Sues Vision Solar Over Unfair and Deceptive Sales, Violations of Home Improvement Act* (March 16, 2023), available at https://portal.ct.gov/AG/Press-Releases/2023-Press-Releases/Attorney-General-Tong-Sues-Vision-Solar-Over-Unfair-and-Deceptive-Sales (last visited September 22, 2023) (disclosing that the Attorney General of Connecticut sued Vision Solar for preying on low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that in some cases were never activated); David Lazarus, *Column: This Solar Company Wouldn't Let a Dead Woman out of Her Contract*, LA TIMES, June 1, 2021, available at https://www.latimes.com/business/story/2021-06-01/column-solar-power-dead-customer (reporting that Vivint (subsequently Sunrun) signed up a 91-year-old woman for solar panels weeks before her death and then steadfastly refused the family's pleas to cancel the contract after her death).

[3] *See, Vivint Solar Buyers Ink Deal in Predatory Sales Suit*, LAW360, Sept. 12, 2022, https://www.law360.com/articles/1529150/vivint-solar-buyers-ink-deal-in-predatory-sales-suit (last visited on October 19, 2022); Press Release, Better Business Bureau, *BBB Scam Alert: "Free solar panels" can cost you big time! How to spot a phony offer and find a trustworthy business* (September 22, 2023), available at https://www.bbb.org/article/scams/27595-bbb-scam-alert-free-solar-panels-can-cost-you-big-time-how-to-spot-a-phony-offer (last visited on September 28, 2023); Better Business Bureau Business Profile of Sunnova Energy Corporation, Current Alert of deceptive sales practices, available at https://www.bbb.org/us/tx/houston/profile/solar-energy-design/sunnova-energy-corporation-0915-90035524 (last visited September 28, 2023); Press Release, California Contractors State Licensing Board, *CSLB Warns Consumers to be Cautious of Misleading and Illegal Solar Advertisements* (April 17, 2023), available at https://www.cslb.ca.gov/Resources/PressReleases/2023/Illegal_Advertisements.pdf (last visited September 28, 2023); Better Business Bureau Business Profile of Solar Mosaic LLC, Current Alert of forced payments for solar services not received, available at https://www.bbb.org/us/ca/oakland/profile/financial-services/solar-mosaic-llc-1116-444414/complaints (last visited September 28, 2023); Randy Travis, *Georgia PSC 'getting lit up' with complaints about home solar ripoffs*, FOX5 ATLANTA, May 26, 2022, available at https://www.fox5atlanta.com/news/psc-getting-lit-up-with-complaints-about-home-solar-ripoffs (last visited September 28, 2023); Dale Yurong, *198 Fresno County residents cheated in solar power scam*, ABC30 FRESNO, September 19, 2019, available at https://abc30.com/fresno-county/fersno-scam-solar-fraud/5554203/ (last visited September 28, 2023); *Vivint Solar Investors Sue Brass Over Predatory Sales Worries*, LAW360, Mar. 10, 2020, https://www.law360.com/articles/1252108/vivint-solar-investors-sue-brass-over-predatory-sales-worries (last visited on October 19, 2022); Kurtis Ming, *California Establishes Fund for Victims of Solar Fraud*, CBS SACRAMENTO, Jul. 25, 2022, available at https://www.cbsnews.com/sacramento/news/california-establishes-fund-for-victims-of-solar-fraud/ (last visited on October 19, 2022); *CFPB Takes Action Against Fintech Company GreenSky for*

22.     SUNNOVA provides a wide range of services including direct solar panel, battery, electric vehicle charging, and generator sales, and is also a lender and/or loan broker which has developed and administers a paperless lending platform that frequently relies on sales by third party agents. The focus of SUNNOVA'S business is selling solar panels and other energy products through itself or its agents and arranging or providing loans to finance the purchase and installation of those products on the homes of individual consumers.

23.     To expand its business, SUNNOVA designed, implemented and oversees a program that entices solar installation contractors to partner with SUNNOVA by promising that by doing so they "win more work, close more deals, and get paid faster."[4] SUNNOVA partners and the sales agents of these partners are deputized to simultaneously sell customers solar panels and arrange financing for the purchase of the solar panels through SUNNOVA loans. The availability of financing allows the partner contractors to close more transactions with near immediate approval.

24.     SUNNOVA vests its own sales agents and the sales agents of its partners like Greenspire with the authority to obtain nonpublic Personally Identifiable Information ("PII") from consumers and to submit loan applications on their behalf. The partners and their sales agents are SUNNOVA'S agents in originating loans.

25.     Upon information and belief, SUNNOVA offers its partners immediate, on-

---

*Enabling Merchants to Secure Loans For Consumers Without Their Authorization*, CONSUMER FINANCIAL PROTECTION BUREAU, Jul. 12, 2021, https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-against-fintech-company-greensky-for-enabling-merchants-to-secure-loans-for-consumers-without-their-authorization/#:~:text=The%20CFPB%20issued%20a%20consent,to%20prevent%20future%20fraudulent%20loans (last visited October 19, 2022); Jeff Goldman, NJ.COM, Oct. 24, 2019, *Vivint Solar Agrees to Pay $122k Fine Over Charges of Deceptive Door-to-Door Sales Practices*, https://www.nj.com/news/2019/10/vivint-solar-agrees-to-pay-122k-fine-over-charges-of-deceptive-door-to-door-sales-practices.html (last visited October 19, 2022); *Vivint, Inc. to pay $375,000 to Resolve Allegations of Deceptive Advertising and Sales Practices*, Feb. 12, 2015, GEORGIA OFFICE OF THE ATTORNEY GENERAL CONSUMER PROTECTION DIVISION, https://consumer.georgia.gov/press-releases/2015-02-12/vivint-inc-pay-375000-resolve-allegations-deceptive-advertising-and-sales (last visited on October 19, 2022).

[4] https://www.sunnova.com/dealers, last visited October 2, 2023.

the-spot approval of the loan applications that they submit through an electronic, paperless process. This assures the partner contractors that they can close transactions in minutes with the assurance that they will be promptly paid for every deal they close.

26.     Upon information and belief, SUNNOVA retains a portion of every loan generated by the sales agents of its partners to cover its fees and charges. Thus, both SUNNOVA and the partner contractors financially benefit from every loan generated by its own sales agents and the sales agents of the partners like Greenspire in the SUNNOVA Program. SUNNOVA is thereby incentivized to keep partners happy as they are agents and joint venturers in the SUNNOVA program and the source of SUNNOVA'S fees. Without salespeople, SUNNOVA could not facilitate loans. Plaintiff will refer to this scheme as the "SUNNOVA Program."

27.     The SUNNOVA Program enables and facilitates the exploitation of vulnerable consumers by unscrupulous solar installation contractors who become partners in the SUNNOVA Program. Upon information and belief, there are little to no effective safeguards in the SUNNOVA Program to protect consumers. As a result, consumers are placed in loans whose terms they had no opportunity to review, and that they do not understand.

28.     SUNNOVA's business model allows its "Partners" to reap massive profits from saddling consumers with tens of thousands of dollars in debt, incentivizing entering unwitting consumers into the loans by any means necessary. The SUNNOVA program's paperless system, focus on speed, and financial incentives allow partners such as Greenspire to close sales transactions, lock customers into financing, and receive immediate payment through the SUNNOVA Program with no regard to their ability to actually perform the work contracted, including without seeking the necessary approvals from local governments.

29.     Upon information and belief, SUNNOVA has elected to turn a blind eye to misconduct by its partners and, despite deputizing them with significant authority to lock consumers into loans, exercises virtually no oversight over their activities. Instead, SUNNOVA chooses to rely upon meaningless warranties and representations in contracts with its partners and to pocket a portion of every loan generated by its partners such as Greenspire.

30.     Greenspire participates in the SUNNOVA Program and is one of SUNNOVA's partners. It utilizes a fraudulent scheme to saddle consumers with solar panel installation contracts and loans to finance the purchase of the solar panels that the consumer never entered into.

### B. **SUNNOVA Violates Federal Law Regulating Credit Reporting**

31.     The federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 *et seq.*, was enacted to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Dutta v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2018) 895 F.3d 1166, 1169 (quoting *Safeco Ins. Co. of Am. v. Burr* (2007) 551 U.S. 47, 52).

32.     SUNNOVA violates the FCRA and its implementing regulations because it has not developed an Identity Theft Prevention Program as required by 16 C.F.R. §681.1(d) ("Red Flags Rule"). *See also* 15 U.S.C. §1681m(e). SUNNOVA further violates the FCRA by obtaining consumer reports for reasons other than the statutorily permissible purposes. 15 U.S.C. 1681b(f). SUNNOVA's violations of the FCRA may serve as predicate unlawful acts for the purposes of Plaintiff's UCL cause of action.

### 1. **Red Flags Rule Violations**

33.     Rules promulgated under the FCRA require that "[e]ach financial institution or *creditor* that offers or maintains one or more *covered accounts* must develop and implement a written Identity Theft Prevention Program (Program) that is

designed to detect, prevent, and mitigate identity theft in connection with the opening of a covered account or any existing covered account." 16 C.F.R. §681.1(d)(1) (emphasis added) (the "Red Flags Rule").

34.    The Red Flags Rule adopts the definition of a "creditor" under the Equal Credit Opportunity Act as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. §1691a(e); 16 C.F.R. §681.1(b)(5). Further, the Red Flag Rule supplements that definition and requires that a creditor fulfill at least one of the three conditions in 15 U.S.C. §1681m(e)(4)(A). 16 C.F.R. §681.1(b)(5). Relevant here, a "creditor" for the purposes of the Red Flag Rule is one that "obtains or uses consumer reports, directly or indirectly, in connection with a credit transaction." 15 U.S.C. §1681m(e)(4)(A)(i).

35.    SUNNOVA is a "creditor" required to comply with the Red Flags Rule because it "regularly extends, renews, or continues credit" to finance the purchase and installation of solar panels on the homes of individual consumers, *see* 15 U.S.C. §1691a(e), and it "obtains or uses consumer reports, directly or indirectly, in connection with [] credit transaction[s]"—namely, credit transactions for the sale of solar panels. 15 U.S.C. §1681m(e)(4)(A)(i).

36.    The Red Flag Rule defines a "covered account" as: "[a]n account that a financial institution or creditor offers or maintains, primarily for personal, family, or household purposes, that involves or is designed to permit multiple payments or transactions, such as a credit card account, mortgage loan, automobile loan, margin account, cell phone account, utility account, checking account, or savings account." 16 C.F.R. §681.1(b)(3)(i).

37.    The loan accounts SUNNOVA offers and maintains in connection with

transactions for the sale of solar panels are "covered accounts" within the meaning of the Red Flag Rule because they are accounts that are used primarily for personal, family, or household purposes (i.e., non-commercial) and are designed to permit multiple payments.

38.     Identity theft is defined as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. §1022.3(h).

39.     A Program required by the Red Flags Rule "must be appropriate to the size and complexity of the financial institution or creditor and the nature and scope of its activities," 16 C.F.R. § 681.1(d)(1), and must contain "reasonable policies and procedures to":

> (i) Identify relevant Red Flags for the covered accounts that the financial institution or creditor offers or maintains, and incorporate those Red Flags into its Program;
>
> (ii) Detect Red Flags that have been incorporated into the Program of the financial institution or creditor;
>
> (iii) Respond appropriately to any Red Flags that are detected pursuant to paragraph (d)(2)(ii) of this section to prevent and mitigate identity theft; and
>
> (iv) Ensure the Program (including the Red Flags determined to be relevant) is updated periodically, to reflect changes in risks to customers and to the safety and soundness of the financial institution or creditor from identity theft.

40.     16 C.F.R. §681.1(d)(2). A "Red Flag" means "a pattern, practice, or specific activity that indicates the possible existence of identity theft." 16 C.F.R. §681.1(b)(9).

41.     The Program must be approved by a board of directors or an appropriate

committee of the board of directors; involve senior level management in the oversight, development, implementation, and administration of the Program; train staff to effectively implement the Program; and exercise appropriate and effective oversight of service provider arrangements. 16 C.F.R. § 681.1(e). Financial institutions or creditors that are required to develop a Program must consider the guidelines set forth in 16 C.F.R. §681, App. A, and include in their Programs the guidelines that are appropriate. 16 C.F.R. §681(f).

42.    SUNNOVA violates the Red Flag Rule because, on information and belief, it does not have an Identity Theft Protection Program that is appropriate to its size and complexity and designed to detect, prevent, and mitigate identity theft in connection with the opening of a covered account or any existing covered account. *See* 16 C.F.R. §681.1(d)(1). It has no reasonable policies or procedures to identify relevant Red Flags and incorporate those Red Flags into a Program, to detect Red Flags, to respond appropriately to any detected Red Flags, or to periodically update its Program. *See* 16 C.F.R. §681.1(d)(2). It does not train staff on recognizing or responding to Red Flags. *See* 16 C.F.R. §681.1(e)(3). It has no policies and procedures for exercising appropriate and effective oversight of its service providers, including the solar panel installers who travel door-to-door to sign up customers for SUNNOVA financing. *See* 16 C.F.R. §681.1(e)(4).

43.    Further, SUNNOVA has not implemented the guidelines listed in 16 C.F.R. §681, App. A (the "Guidelines"). For example, the Guidelines list appropriate responses to the detection of identity theft, including closing an existing covered account and not attempting to collect on a covered account or not selling a covered account to a debt collector. 16 C.F.R. §681, App. A IV(f), (g). Despite having actual notice that Plaintiff was the victim of identity theft, as he did not authorize the use of his personal information to be listed on the loan SUNNOVA extended to him, SUNNOVA took no steps to investigate Plaintiff's claim or open a fraud

investigation. Instead, SUNNOVA falsely reported a past-due balance on a SUNNOVA account to consumer reporting agencies, damaging Plaintiff's credit. SUNNOVA still alleges that Plaintiff is on a loan to which he never consented.

44.     The Guidelines also provide guidance for the oversight of service providers who perform activities in connection with covered accounts and recommend that "the financial institution or creditor should take steps to ensure that the activity of the service provider is conducted in accordance with reasonable policies and procedures designed to detect, prevent, and mitigate the risk of identity theft." 16 C.F.R. §681, App. A VI(c). This could include requiring the service providers to have policies and procedures to detect relevant Red Flags and either report such Red Flags to the creditor or take appropriate steps to prevent or mitigate the occurrence of identity theft. 16 C.F.R. §681, App. A VI(c). SUNNOVA does not exercise the requisite oversight over its solar installer Partners, who have near carte-blanche authority to enter customers into financing for the purchase of solar panels through SUNNOVA loans. SUNNOVA essentially rubberstamps the loan applications submitted by its Partners by offering immediate, on-the-spot approval, and does not perform sufficient investigation to ensure consumers – such as Plaintiff – have consented to credit pulls or loans generated with the PII submitted by SUNNOVA's Partners.

45.     SUNNOVA's failure to implement a compliant Identity Theft Protection Program enables systematic and widespread violations of the FCRA, damaging consumers who do not have notice that they are obligated on expensive, multi-decade loans to which they never consented. Consumers also have no reasonable recourse once they learn their information has been used without their consent, since SUNNOVA does not maintain sufficient policies or procedures to investigate and mitigate the occurrence of identity theft.

//

### 2. Permissible Use Violations

46.     The FCRA prohibits persons from obtaining consumer reports for any reason other than a permissible purpose. 15 U.S.C. §1681b(f) ("A person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section."). Additionally, the entity using the credit report must certify truthfully that it is obtaining the consumer report for a permissible purpose. 15 U.S.C. §1681b(f)(2).

1)     SUNNOVA violates the permissible use prohibitions in the FCRA by obtaining and using consumer reports when SUNNOVA's sales representatives seek and obtain the consumer reports underlying SUNNOVA's extension of financing for the purchase of solar panels and do not consent to be borrowers on SUNNOVA loan agreements. Circumventing credit score limitations by pulling the credit report of a consumer, and then signing that person up as a borrower on expensive, multi-decade loans without their knowledge or consent, is not a permissible purpose under the FCRA.

### SUNNOVA and its Salespeople Entrapped Plaintiff in Fraudulent Contracts

47.     Plaintiff is a 78-year-old monolingual Spanish speaker. He proudly owns the home where he lives with his wife. Plaintiff has the equivalent of a second-grade education and conducts all business and personal matters in Spanish. He had a long-standing job at Fender Musical Instruments, where he worked until a sudden and unplanned retirement in June 2022 so that he could care for his hospitalized wife.

48.     Plaintiff is technologically illiterate. Plaintiff cannot independently use a computer and does not know how to access email. He has no comprehension of how to access email without assistance. He does not know how to sign documents electronically. He does not own a smartphone. In the summer of 2022, Plaintiff's

children opened an e-mail account for him, which was necessary to deal with issues related to his wife's hospitalization, but Plaintiff has never himself used that account and does not know the password. That e-mail account is different than the one fraudulently created and used to unlawfully enter Plaintiff into the alleged SUNNOVA contract.

49.     In June 2022, a man named Jonathan Correa and another man whose name is unknown came to Plaintiff's door unannounced. The door-to-door salesmen were acting as agents of SUNNOVA who, unbeknownst to Plaintiff, was operating through its contractor/installer partner Greenspire. The salesmen did not tell Plaintiff that they were with either Greenspire or SUNNOVA.

50.     In Spanish, the salesmen told Plaintiff that they were offering a program that could save him lots of money each month on his energy bill. The salesmen asked to see Plaintiff's current energy bills. Plaintiff produced two Southern California Edison bills, one for $139 and the other for $148. One of the salesmen copied down some information from the bills into his notebook, but Plaintiff could not see what information he had copied.

51.     The salesmen told Plaintiff that they could provide and install solar panels for free, and that thereafter he would only be paying $105 each month for his energy bill. Plaintiff did not know what company the salesmen were representing. The salesmen said they would need to return to see if Plaintiff qualified for the program, a process they described as checking his roof and electrical box for compatibility.

52.     At this time, Plaintiff's wife was in the intensive care unit of the local hospital, where she had been since late May 2022 and would ultimately remain until October of that year, when she would be transferred directly to an in-patient rehabilitation center where she stayed another three months. This was an extremely challenging time for Plaintiff, emotionally and financially. With tears in his eyes,

Plaintiff told the salesmen of his wife's hospitalization and that the savings they were promising would be very helpful and he was interested in the solar panel program they offered. Specifically, that he would get solar panels for free and lower his utility bill to around $105 per month.

53.     The salesmen exploited Plaintiff's vulnerabilities. The salesmen did not provide Plaintiff with a paper or electronic contract or agreement. In fact, the salesmen never offered Plaintiff any kind of information or documentation of any type. Plaintiff never touched the electronic devices the salesmen had in their possession and had no smartphone or e-mail of his own, and does not even have internet in his home. The salesmen merely assured Plaintiff that they would return shortly to see if Plaintiff qualified for the program.

54.     Several weeks after the initial visit, Jonathan Correa and the other salesman appeared, again without notice, at Plaintiff's front door. Plaintiff initially told them he was no longer interested in the solar panels. Nothing had transpired since their first visit and the salesmen had not returned as promptly as promised. But the salesmen were persistent in their pressure, assuring Plaintiff that the solar panels would be provided and installed for free and that he would, in short order, be saving considerable sums each month on his energy bill. Plaintiff allowed the salesmen to scale his roof and check his electrical box, which they informed him were compatible for the solar panel system.

55.     During the second visit, Plaintiff witnessed one of the salesmen using the tablet computer they brought, before switching to his cell phone and working on that. At one point, one of the men fielded a call in English on his phone, which Plaintiff could not understand. At no point did Plaintiff touch or use any of the electronic devices the salesmen brought. Plaintiff does not own a computer or a smartphone and is technologically illiterate. The salesmen never presented Plaintiff with any type of physical or electronic documentation and Plaintiff never signed

anything. Plaintiff again expressed interest in the savings the salesmen promised and the solar panel system that they promised would be provided and installed for free. The salesmen told Plaintiff they would return in several weeks for the installation.

56.     Months passed after the second visit by the salesmen. Plaintiff did not know what company they worked for and had not been provided any contact information for them. Without any type of documentation, and without having signed or seen any contract, Plaintiff again figured the salesmen had not followed through on their promises and nothing further would happen. Plaintiff was confused and surprised when installers appeared at his home in October 2022. The men that showed up at his house did not speak Spanish. With no ability to contact the salesmen, and not knowing that the companies SUNNOVA or Greenspire even existed, Plaintiff relied on the promises that the panels were free and he would thereafter only be paying a fixed monthly energy bill of $105, and allowed the installers to proceed.

57.     Some months after the panels were installed, Plaintiff began receiving harassing phone calls saying he was $918 past due on his energy bill. Plaintiff did not understand who was calling him, and still had no idea that SUNNOVA or Greenspire existed, as he had never seen let alone signed any kind of document identifying the companies. Because Southern California Edison had always been Plaintiff's energy provider, and because a Southern California Edison bill arrived around the time some of the calls from SUNNOVA were received, he assumed the amount was due to Southern California Edison and he promptly paid Southern California Edison $918.

58.     The harassing debt collection phone calls, however, persisted. Plaintiff then enlisted the assistance of a neighbor, who helped him figure out that a company called SUNNOVA was who was calling. Plaintiff then promptly paid the $918 to SUNNOVA to avoid the harassing calls and damage to Plaintiff's credit and to

prevent any formal debt collection proceedings. Thus, Plaintiff paid *both* Southern California Edison *and* SUNNOVA *each* $918, which was a tremendous sacrifice for him.

59.     Thereafter, Plaintiff's daughter contacted SUNNOVA and helped Plaintiff obtain, for the first time, a copy of the alleged contract. The SUNNOVA contract says it was signed on June 20, 2022, and is a 25-year loan totaling $48,272.37. Plaintiff would be 102 when he theoretically would finish paying it off. Although Plaintiff is a monolingual Spanish speaker, the alleged SUNNOVA contract is in English. Plaintiff could not have read it even if he had seen the contract in June 2022, which he did not.

60.     Plaintiff had only ever communicated with Jonathan Correa and the other salesman in Spanish. Jonathan Correa is not listed on the contract, but someone named "Madeline Arteaga" is listed as the signatory for Greenspire. A search of the Contractor State License Board ("CSLB") website lists her as both employed by "Rayker Inc. dba Greenspire Construction" and SUNNOVA. The contract states that it was assigned to SUNNOVA and executed by SUNNOVA authorized signatory John Santo Salvo. The alleged contract states it was signed by "Benjamin Nieto" *and* John Santo Salvo in the same minute – 14:28 Mountain Time. The SUNNOVA contract also indicates that it was signed by Madeline Arteaga at 15:30 Pacific Time, which is over two hours after it was allegedly signed by Plaintiff and SUNNOVA.

61.     The monthly payments in the alleged contract with Sunnova are $110.57 for the first eighteen months, and $163.48 for months 19-300, much more than the $105 promised and more than the electric bills Plaintiff presented to the salesmen.

62.     Plaintiff's birth name is Benjamin Martinez Nieto. Martinez is his paternal last name, and as is customary in Mexico it is the penultimate name when written out. Plaintiff always uses "Martinez" as his last name, because that is what his last

name is. The name used in the electronic signature on the fraudulently created contract, however, is "Benjamin Nieto," and the initials electronically signed are "B.N." Martinez, not Nieto, is Benjamin's last name. Nieto is his mother's maiden name. Plaintiff's initials are "B.M." and he has never, nor would he ever, initial anything "B.N."

63.    Plaintiff never consented to the use of electronic records to receive all disclosures he was entitled to receive under the law, much less in a manner reasonably demonstrating that he could access the disclosures in an electronic form. Further, Plaintiff did not and could not have intended to sign any agreement with SUNNOVA electronically, since he never knew about the SUNNOVA contract.

64.    Plaintiff never signed any documents electronically. Plaintiff has never seen nor used the Yahoo e-mail address on the contract, martinezbenjamin455@yahoo.com. Nobody in Plaintiff's family had ever seen this e-mail prior to the alleged SUNNOVA contract being received for the first time in June 2023. Upon information and belief, this e-mail address was fraudulently created and used by SUNNOVA and its agents to lock Plaintiff into a contract and loan agreement for which he never agreed and never wanted.

65.    Plaintiff subsequently received a mailing from Greenspire, which is how he learned that they were the company that had come to install the solar panels for SUNNOVA. However, Plaintiff has never received any additional information regarding any alleged Greenspire contract.

66.    After realizing that SUNNOVA and its agents had fraudulently entered Plaintiff into a transaction to which Plaintiff did not agree, Plaintiff attempted to cancel any purported contract(s) with SUNNOVA and Greenspire. SUNNOVA and Greenspire to date have ignored Plaintiff's request to cancel the fraudulent contract(s) that they contend Plaintiff entered into.

67.     Plaintiff *never signed any type of contract with any Defendant*. Nonetheless, SUNNOVA rely upon forged electronic signatures coming from an email address to which Plaintiff does not have and never had access to contend that he is contractually obligated to make monthly payments over the next 25 years to pay off a $48,272.37 loan.

68.     Although Plaintiff has previously canceled any alleged contracts, and such contracts are forged, rendering them void *ab initio*, this complaint shall constitute separate notice of the forgeries and the request for cancellation pursuant to the Home Solicitation Sales Act, Civil Code §§1689.7 and 1689(b)(1).

69.     Despite Plaintiff's lawful cancellation of any alleged contract(s) and/or loan agreement(s) and notice of fraudulent activity, which were void *ab initio*, SUNNOVA refuses to acknowledge the lawful rescission and have declined to take any corrective action.

70.     SUNNOVA continues to claim that Plaintiff is bound by contracts he never signed.

71.     SUNNOVA knew, or should have known, that it and its agents and representatives' conduct was likely to cause harm to Plaintiff, an elder adult.

72.     SUNNOVA's actions have had a severe negative effect on Plaintiff and have caused him to suffer non-economic damages including emotional distress, stress, anxiety, and loss of enjoyment of life.

73.     Specifically, Plaintiff has lost hours of sleep every night as he ruminates over SUNNOVA's conduct. He now sleeps far fewer hours each night than he used to because he has a continuous loop of panicked thoughts about how he is going to get out of the alleged debt. Plaintiff ruminates over SUNNOVA's actions daily. He has crying spells because of the stress caused by SUNNOVA.

74.     SUNNOVA's actions are constantly looming over his head. He worries that he is not going to be able to pay for further repairs to his home because he will not

have money because SUNNOVA continues to demand payments.

75.     He is confused, helpless, and frustrated because he does not understand how he got into this situation. He feels ignorant, and stigmatized for being elderly, not speaking English, and having an elementary school education. He feels like these qualities made him an easy target, and this has caused depression and anxiety, and lower self-worth.

76.     Plaintiff feels humiliated, embarrassed, and swindled, and blames himself for SUNNOVA's actions. He has lost trust in others because he trusted what SUNNOVA's agents told him and was taken advantage of.

77.     Plaintiff feels emasculated and feels like his role in the family has changed. He gets in more arguments with his children because of the pain caused by SUNNOVA.

78.     Plaintiff has lost weight, has suffered from increased blood pressure and gastrointestinal issues, and has constant headaches.

**FIRST CAUSE OF ACTION**
**(Fraudulent Concealment)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

79.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

80.     SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

81.     SUNNOVA and Greenspire concealed facts in making representations to Plaintiff including but not limited to:

    a)     The fact that SUNNOVA and its agents were selling a solar installation contract and loan agreement,

    b)     The fact that SUNNOVA and its agents used Plaintiff's personally identifiable information ("PII") to complete a solar installation contract and loan application in Plaintiff's name, and

c)      The fact that SUNNOVA and its agents were placing Plaintiff in a solar installation contract with a 25-year loan.

82.     SUNNOVA and its agents concealed material information from Plaintiff. As a result of that concealment, Plaintiff has been harmed. SUNNOVA and its agents also made partial statements and half-truths in a situation which required them to make complete and full disclosure of all material facts known to them.

83.     SUNNOVA and its agents failed to disclose to Plaintiff complete and accurate information about the matters alleged herein. SUNNOVA and its agents did so despite owing a duty to disclose complete and accurate information to Plaintiff. SUNNOVA and its agents' actions in failing to disclose this information were intentional.

84.     Plaintiff was unaware of the true facts that were concealed from him.

85.     While Plaintiff never entered into any transaction with SUNNOVA, if Plaintiff had been given full and accurate information, he would have refused to engage in any discussion with SUNNOVA.

86.     Plaintiff was harmed by SUNNOVA's concealment. The concealment was a substantial factor in causing harm to Plaintiff.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION**
**(Negligence)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

87.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

88.     SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

89.     Plaintiff alleges that at all times relevant herein, SUNNOVA acted negligently, carelessly, recklessly and/or unlawfully in representing facts to Plaintiff, failing to disclose complete and accurate information to Plaintiff, and in

designing and implementing a program which enables and facilitates unauthorized loans. Specifically, SUNNOVA and its agents acted negligently, carelessly, recklessly and/or unlawfully by:

    a)    Concealing the fact that SUNNOVA and its agents were selling a solar installation contract and loan agreement,

    b)    Concealing the fact that SUNNOVA and its agents accessed and intended to use the PII of Plaintiff to submit a loan application for Plaintiff,

    c)    Concealing the fact that SUNNOVA and its agents were placing Plaintiff in a solar installation contract, and

    d)    Concealing the fact that SUNNOVA was placing Plaintiff in a loan agreement.

90.    As a direct and legal result of the wrongful acts and/or omissions of SUNNOVA, Plaintiff has been harmed.

    WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION
**(Violations of the Consumers Legal Remedies Act, Civil Code §1750, *et seq.*)**
**(On Behalf of Plaintiff and the General Public Against SUNNOVA and DOES 1-20)**

91.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

92.    The Consumers Legal Remedies Act, Civil Code §1750 *et seq.* ("CLRA") was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code §1770 that are prohibited in any transaction intended to result in the sale or lease of goods or services to a consumer.

93.    At all relevant times, Plaintiff was a "consumer" within the meaning of the CLRA, Civil Code §1761(d). SUNNOVA and its agents are companies and, as

such, are "persons" as that term is defined in California Civil Code §1761(c). The transaction from which this action arises was intended to result in the sale or lease of goods or services to a consumer and are covered by the CLRA.

94.     The acts and practices of SUNNOVA and its agents violated the CLRA and constitute the following unfair methods of competition and unfair or deceptive practices:

a.     Passing off goods or services as those of another in violation of Civil Code §1770(a)(1);

b.     Misrepresenting the source, sponsorship, approval, or certification of goods or services in violation of Civil Code §1770(a)(2);

c.     Misrepresenting the affiliation, connection, or association with or certification by, another in violation of Civil Code §1770(a)(3);

d.     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Civil Code §1770(a)(5);

e.     Representing that goods or services are of a particular standard, quality, or grade, in violation of Civil Code §1770(a)(7);

f.     Representing and advertising goods or services with the intent to not sell it as advertised in violation of Civil Code §1770(a)(9);

g.     Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of Civil Code §1770(a)(13);

h.     Representing that a transaction confers or involves rights and remedies which it does not have or involve, or are prohibited by law in violation of Civil Code §1770(a)(14);

i.     Representing that the subject of a transaction has been supplied in accordance with a previous transaction when it has not, in violation of

Civil Code §1770(a)(16);

j.    Misrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction with a consumer, in violation of Civil Code §1770(a)(18); and

k.    Inserting an unconscionable provision in a contract, in violation of Civil Code §1770(a)(19).

95.    SUNNOVA and its agents' violations of the CLRA present a continuing threat to Plaintiff and the public in that SUNNOVA and its agents continue to engage in the above-referenced acts and practices.

96.    The acts and practices of SUNNOVA and its agents are willful, inattentional, and approved by managing agents as detailed above. The acts and practice have harmed Plaintiff and Plaintiff is entitled to an award of damages pursuant to Civil Code §1780(a) in an amount to be proven at trial.

97.    At all relevant times, Plaintiff was a senior citizen as that term is defined in Civil Code §1761(f).

98.    Plaintiff has satisfied all statutory notice requirements except as may have been excused by misconduct of SUNNOVA or its agents. This Complaint shall serve as further notice of the statutory violations described therein. SUNNOVA has failed and refused to make restitution or offer Plaintiff adequate correction, repair, relief, or other remedy.

99.    Additionally, SUNNOVA's violations of Civil Code §1770 present a continuing threat to members of the public in that SUNNOVA continues to engage in the alleged practices and has not ceased.

100.    Plaintiff seeks actual damages, an injunction, restitution, punitive damages, statutory damages, and any other relief the court deems proper pursuant to Civil Code §1780(a).

101.    Plaintiff is entitled to statutory damages pursuant to Civil Code §1780(b)

due to his status as a senior citizen.

102.   Plaintiff is also entitled to an award of attorneys' fees and costs pursuant to Civil Code §1780(d).

WHEREFORE, Plaintiff prays for relief as set forth below.

**FOURTH CAUSE OF ACTION**
**(Violation of the Elder Abuse and Dependent Adult Civil Protection Act, Welfare & Institutions Code §15600, *et seq*.)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

103.   Plaintiff realleges and incorporates by reference as though fully herein each and every allegation contained in the preceding paragraphs.

104.   In addition to its own violations of law, SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

105. The California Legislature declared that elders are a "disadvantaged class" vulnerable to predatory practices when it enacted the Elder Abuse Act, a state law enforcing the civil rights of the elderly and disabled." Welf. & Inst. §15600. In enacting Elder Abuse Act, the Legislature recognized that elders may be subject to abuse and declared that the State "has a responsibility to protect them" from abuse, including financial abuse.

106.   The 2008 amendments to Elder Abuse Act created a conclusive presumption of financial abuse where a person or entity knew or should have known that their conduct was likely to be harmful to an elder. "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." Welf. & Inst. §15610.30(b).

107.   Plaintiff at all times relevant to the events described herein, was an "elder" adult within the meaning of Welfare & Institutions Code §15610.27 because he is over the age of 65.

108.   At all times relevant herein, SUNNOVA actually knew or should have known that Plaintiff was an elder adult.

109.   The acts and omissions of SUNNOVA as above alleged constitute financial abuse of an elder adult within the purview and protections of the Welfare & Institutions Code §15610.07 in that they were the proximate cause of the financial abuse or other treatment with resulting physical harm, and pain or mental suffering to Plaintiff. "Mental suffering" as used herein means fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, harassment, or by deceptive acts performed, or false and misleading statements made with malicious intent to cause such mental conditions in an elder or dependent adult.

110.   SUNNOVA took undue advantage of the Plaintiff, by misrepresenting and concealing material facts.

111.   In doing the acts alleged herein SUNNOVA took, secreted, appropriated, or retained (or else assisted in so taking, secreting, appropriating, or retaining) the property of Plaintiff to a wrongful use, or with the intent to defraud, or both, the property of Plaintiff, thereby causing him to suffer financial abuse.

112.   SUNNOVA is engaged in a pattern of financial elder abuse with a conscious disregard for Plaintiff's rights, as well as recklessness, oppression, fraud, or malice in the commission of this abuse as defined by Civil Code §3294.

113.   As a direct and legal result of SUNNOVA's violations of the Elder and Dependent Adult Civil Protection Act in their dealings with Plaintiff, Plaintiff has suffered actual, consequential and incidental damages, including without limitation, with respect to Plaintiff's mental suffering and emotional distress. Plaintiff is also entitled to exemplary damages, particularly because SUNNOVA's predatory practices have been directed at especially vulnerable and unsophisticated consumers.

114.   Plaintiff continues to suffer damages, the precise amount of which is unknown

at the present time; the limitations of Code of Civil Procedure §377.34 do not apply here.

115.   In addition to all other remedies provided by law, pursuant to terms of Welfare & Institutions Code §15675.5, Plaintiff is entitled to actual damages and general damages, and all other forms of relief otherwise allowed by law.

116.   Plaintiff is also entitled to treble damages under Civil Code §3345 which is calculated as three times the amount that the trier of fact otherwise awards in damages against SUNNOVA for its wrongful conduct.

117.   Pursuant to Welfare & Institutions Code §15657.5, Plaintiff is entitled to an award for his reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788, *et seq.*)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

118.   Plaintiff realleges and incorporates herein by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

119.   In addition to its own violations of law, SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

120.   The Rosenthal Fair Debt Collection Practices Act, Civil Code §1788, *et seq.* (the "Rosenthal Act") was enacted in 1976 to ensure the integrity of our banking and credit industry. Civil Code §1788.1(b). The Legislature found that "unfair or deceptive debt collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers." Civil Code §1788.1(a)(1).

121.   At all times relevant herein SUNNOVA was and is a "debt collector" within the meaning of Civil Code §1788.2(c). SUNNOVA regularly and in the ordinary course of business, on behalf of itself or others, engages in acts and practices in connection with the collection of consumer debt.

122.   The debt which SUNNOVA is attempting to collect from Plaintiff is a "consumer debt" within the meaning of Civil Code §1788.2(f). Plaintiff is a "debtor" within the meaning of Civil Code §1788.2(h) in that he is natural person from whom SUNNOVA sought and continue to seek to collect a consumer debt alleged to be due and owing.

123.   SUNNOVA has a non-delegable duty under the Rosenthal Act not to commit violations of the Act, and not to allow its agents to commit such violations, which duty SUNNOVA is prohibited from violating.

124.   Since 2022, SUNNOVA has attempted to collect a non-existent debt from Plaintiff. SUNNOVA has contacted Plaintiff by letter and phone, and collected amounts that are not owed as matter of law because Plaintiff never entered into any contract with SUNNOVA, and furthermore lawfully rescinded any alleged contracts. Plaintiff does not owe any amount to SUNNOVA.

125.   SUNNOVA made false representations that Plaintiff owed monthly payments to SUNNNOVA even though Plaintiff never had any obligation to SUNNOVA.

126.   SUNNOVA has violated the Rosenthal Act. The violations include, but are not limited to the following:

    a.    SUNNOVA made and used false, deceptive, and misleading representations in an attempt to collect the fraudulent account, in violation of California Civil Code § 1788.17;[5]

    b.    SUNNOVA misrepresented the character, amount, or legal status of the fraudulent account, in violation of California Civil Code §§ 1788.13(e) and 1788.17;[6]

    c.    SUNNOVA misrepresented the compensation which may be lawfully received by SUNNOVA for the collection of the fraudulent account,

---

[5] 15 U.S.C. §§ 1692e and 1692e(10).
[6] 15 U.S.C. § 1692e(2)(A).

in violation of California Civil Code §§ 1788.13(e), 1788.14(b), and 1788.17;[7]

d.  SUNNOVA is attempting to collect the fraudulent account from Plaintiff, an action that cannot lawfully be taken, in violation of California Civil Code 1788.13(e) and 1788.17;[8]

e.  SUNNOVA misrepresented that the fraudulent account is lawfully owed by Plaintiff, in violation of California Civil Code § 1788.17;[9]

f.  SUNNOVA is attempting to collect interest, fees, or other charges from Plaintiff that are not expressly authorized by the law agreement creating the fraudulent account or otherwise permitted by law, in violation of California Civil Code §§ 1788.13(e) and 1788.17;[10]

127.   Furthermore, SUNNOVA violated Civ. Code §1788.17, which requires every debt collector collecting or attempting to collect a consumer debt to comply with the provisions of 15 U.S.C. §1692b to §1692j of 15 U.S.C. §1692.

128.   As a proximate result of SUNNOVA'S violations of the Rosenthal Act, Plaintiff suffered damages in amounts to be proven at trial.

129.   Plaintiff is entitled to recover his actual damages pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(1), or in the alternative, Civil Code §1788.30(a), including, but not limited to, damages for his emotional distress.

130.   Plaintiff is also entitled to recover statutory damages pursuant to Civil Code §1788.17, which incorporates by reference the remedies of 15 U.S.C. §1692k(a)(2)(A), or in the alternative, Civil Code §1788.30(b).

131.   Plaintiff is entitled to attorneys' fees and costs pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(3), or in the alternative,

---

[7] 15 U.S.C. § 1692e(2)(B).
[8] 15 U.S.C. § 1692e(2), 1692e(5) and 1692e(10).
[9] 15 U.S.C. § 1692e, 1692e(5), and 1692e(10).
[10] 15 U.S.C. § 1692f(1).

Civil Code §1788.30(c).

WHEREFORE, Plaintiff prays for relief as set forth below.

### SIXTH CAUSE OF ACTION
**(Violations of the Home Solicitation Sales Act, Civil Code §1689.5, *et seq.*)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

132.   Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

133.   In addition to its own violations of law, SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

134.   The Home Solicitation Sales Act, California Civil Code §1689.5 *et seq.* was enacted in 1971 to protect California consumers against the type of pressures that arise when a sales agent appears at a buyer's home. Regardless of whether the buyer invites the seller to his/her home, serious pressure arises from the mere fact that the seller may be an intimidating presence once inside the buyer's home. A reluctant buyer can easily walk away from a seller's place of business, but he/she cannot walk away from his/her own home and may find that the only practical way of getting the seller to leave is to agree to buy what the seller is selling.

135.   As a result, the Home Solicitation Sales Act broadly defines "home solicitation" to mean "any contract, whether single or multiple, or any offer which is subject to approval, for the sale, lease, or rental of goods or services or both, made at other than appropriate trade premises in an amount of twenty-five dollars ($25) or more, including any interest or service charges." Civil Code §1689.5(a). The definition focuses not on who initiated the contact between the buyer and the seller, but on where the contract was made.

136.   Because of these pressures, the Home Solicitation Sales Act gives the non-senior citizen consumer the right to cancel a home solicitation contract until midnight of the <u>third</u> business day after the buyer receives a signed and dated copy of the contract or offer to purchase that complies with Section 1689.7. Civil Code

§1689.6(a)(2). This cancellation right is extended to <u>five</u> days for seniors.

137.  Home solicitation sales contracts must be:

> written in the same language, e.g. Spanish, as principally used in the oral sales presentation, shall be dated, shall be signed by the buyer, and . . . shall contain in immediate proximity to the space reserved for the buyer's signature, a conspicuous statement in the size equal to at least 10-point boldface type, as follows:

> (B) For all buyers: "You, the buyer, may cancel this transaction at any tie prior to midnight for the third business day after the date of the transaction. See the attached notice of cancellation form for an explanation of this right.

Civil Code §1689.7(a)(1); *see also* Civil Code §1689.7(a)(4).

138.  The precise contents of the notice of cancellation are set forth in the Home Sales Solicitation Act and cannot be modified.

139.  If a seller fails to strictly comply with these notice provisions, the buyer retains the right to cancel the contract until the seller complies with the Home Solicitation Sales Act. Civil Code §1689.7(c). The seller is not entitled to any compensation. Civil Code §§1689.11.

140.  The contract that SUNNOVA seeks to enforce against Plaintiff was purportedly entered into at Plaintiff's home, was not entered into at an "appropriate trade premise," is a contract for "goods" and/or "services" and are regulated by and subject to the Home Sales Solicitation Act.

141.  Plaintiff exercised his statutory right to cancel any and all contract(s). SUNNOVA contends Plaintiff entered into and hereby further informs SUNNOVA of his cancellation of any such contract(s).

142.  If the buyer cancels, the seller must return anything the buyer paid within ten (10) days of the notice of cancellation.

143.  The buyer must make the goods available to the contractor for twenty (20) days from the date of cancellation. If the seller fails to retrieve the goods, the buyer may keep the goods without further obligation.

144.   SUNNOVA failed to respond to Plaintiff's cancellation of the non-existent contracts. In violation of the Home Sales Solicitation Act, SUNNOVA has denied Plaintiff his statutory right to cancel.

145.   SUNNOVA refused to cancel any contract(s) with Plaintiff. In violation of the Home Sales Solicitation Sales Act, SUNNOVA has denied Plaintiff his statutory right to cancel.

146.   SUNNOVA violated Civil Code §1689.5*, et seq.* by failing to provide Plaintiff with any fully executed contract signed by Plaintiff and SUNNOVA and its agents, by failing to timely provide Plaintiff with any notice of his five-day right to cancel and by failing to return the amounts collected from Plaintiff within ten (10) days of the date he exercised his statutory right to cancel any contracts SUNNOVA or its agents contend Plaintiff entered into.

147.   Plaintiff received no fully executed contract because he never signed a contract with SUNNOVA, much less a Spanish contract, as Civil Code §1689.7(a)(1) requires.

148.   An actual controversy exists between Plaintiff, on the one hand, and SUNNOVA, on the other hand, concerning their rights and duties under the Home Sales Solicitation Sales Act. This controversy is ripe for adjudication. Plaintiff is entitled to a declaratory judgment adjudicating the rights and duties of the parties under the Home Sales Solicitation Sales Act.

149.   Plaintiff is entitled to actual or nominal damages pursuant to Civil Code § 3360 for SUNNOVA's violations.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SEVENTH CAUSE OF ACTION**
**(Violation of Business and Professions Code §7150 *et seq.*)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

150.   Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

151.   In addition to its own violations of law, SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

152.   Business and Professions Code §7159(d) requires that "A home improvement contract and any changes to the contract shall be in writing and signed by the parties to the contract prior to the commencement of work covered by the contract or an applicable change order and, except as provided in paragraph (8) of subdivision (a) of Section 7159.5, shall include or comply with all of the following: (1) The name, business address, and license number of the contractor. (2) If applicable, the name and registration number of the home improvement salesperson that solicited or negotiated the contract."

153.   Business and Professions Code §7159(b) defines "home improvement contract" as "an agreement, whether oral or written, or contained in one or more documents, between a contractor and an owner or between a contractor and a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, if the work is to be performed in, to, or upon the residence or dwelling unit of the tenant, for the performance of a home improvement, as defined in Section 7151, and includes all labor, services, and materials to be furnished and performed thereunder, if the aggregate contract price specified in one or more improvement contracts, including all labor, services, and materials to be furnished by the contractor, exceeds five hundred dollars ($500). "Home improvement contract" also means an agreement, whether oral or written, or contained in one or more documents, between a salesperson, whether or not they are a home improvement salesperson, and an owner or a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, which provides for the sale, installation, or furnishing of home improvement goods or services."

154.   At all times relevant herein, SUNNOVA and its agents were engaged in

"home improvement" under Business and Professions Code §7151 and in the sale of "home improvement goods or services" with "goods" and "services" being defined by Civil Code §1689.5.

155.   SUNNOVA alleges the existence of one or more "home improvement contracts" between SUNNOVA and Plaintiff within the meaning of Business and Professions Code §7151.2.

156.   Business and Professions Code §7153(a) specifies that "[i]t is a misdemeanor for any person to engage in the occupation of salesperson for one or more home improvement contractors within this state without having, at the time of the sales transaction, a current and valid home improvement salesperson registration issued by the registrar" and "[i]t is a misdemeanor for any person to engage in the occupation of salesperson of home improvement goods or services within this state without having, at the time of the sales transaction, a current and valid home improvement salesperson registration issued by the registrar."

157.   Unbeknownst to Plaintiff, the alleged, forged, SUNNOVA contract contained multiple violations of Bus. & Prof. Code § 7159:

    a)    Subdivision (c)(3)(A): The contractor did not give the buyer a copy of the contract signed and dated by both the buyer and the contract. The buyer did not receive a copy of the contract that initiates the buyer's rights to cancel the contract pursuant to sections 1689.5 to 1689.14, inclusive, of the civil code.

    b)    Subdivision (d): The contract was not signed by the parties to the contract prior to the commencement of the work covered by the contract or any applicable change order. *Plaintiff did not sign the contract.*

158.   Pursuant to Business and Professions Code §7161 the following proscribed acts are considered misdemeanors:

a) Using false, misleading, or deceptive advertising as an inducement to enter into any contract for a work of improvement, including, but not limited to, any home improvement contract, whereby any member of the public may be misled or injured;

b) Making any substantial misrepresentation in the procurement of a contract for a home improvement or other work of improvement or making any false promise of a character likely to influence, persuade, or induce any person to enter into the contract; and

c) Any fraud in the execution of, or in the material alteration of, any contract, trust deed, mortgage, promissory note, or other document incident to a home improvement transaction or other transaction involving a work of improvement.

159. SUNNOVA's alleged contract contains a host of other Business and Professions Code §7161 violations not alleged herein which stem from the fact that Plaintiff did not sign or receive the alleged contract at the time SUNNOVA claims he became obligated on it.

160. Liability for violations of these provisions by a home improvement salesperson extends to the contractor employing him or her. Business and Professions Code §7155.5. Greenspire and its salespersons acted as the agents of SUNNOVA for the purposes of the SUNNOVA Program.

161. At all times relevant herein, SUNNOVA and its agents were under a duty to follow the law, including Business and Professions Code §§7153, 7159, and 7161. The aforementioned statutes were intended to protect against the type of harm suffered by Plaintiff, a California homeowner targeted by an unscrupulous home improvement salesperson for the sale of home improvement goods and services.

162. SUNNOVA's agents breached their duty when SUNNOVA'S sales agents made fraudulent misrepresentations including, but not limited to:

a)   Concealing the fact that SUNNOVA and its agents were selling a solar installation contract and loan agreement,

b)   Concealing the fact that SUNNOVA and its agents intended to use Plaintiff's PII to submit a loan application for Plaintiff,

c)   Concealing the fact that SUNNOVA and its agents were placing Plaintiff in a solar installation contract, and

d)   Concealing the fact that SUNNOVA and its agents were placing Plaintiff in a loan agreement.

163.   SUNNOVA and its agents furthermore breached their duty by submitting a loan application for Plaintiff, placing Plaintiff in a solar installation contract and placing Plaintiff in a loan agreement, all without his knowledge or permission.

164.   As a direct and legal result of the wrongful acts and/or omissions of SUNNOVA, Plaintiff suffered harm.

165.   Business and Professions Code §7160 also creates a private right of action, allowing that "Any person who is induced to contract for a work of improvement, including but not limited to a home improvement, in reliance on false or fraudulent representations or false statements knowingly made, may sue and recover from such contractor or solicitor a penalty of five hundred dollars ($500), plus reasonable attorney's fees, in addition to any damages sustained by him by reason of such statements or representations made by the contractor or solicitor."

166.   Business and Professions Code §7153(b) provides that "Any security interest taken by a contractor, to secure any payment for the performance of any act or conduct described in Section 7151 that occurs on or after January 1, 1995, is unenforceable if the person soliciting the act or contract was not a duly registered salesperson or was not exempt from registration pursuant to Section 7152 at the time the homeowner signs the home improvement contract solicited by the salesperson."

WHEREFORE, Plaintiff prays for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**(Violations of Business and Professions Code §17200, *et seq*.)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

167.   Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the paragraphs above.

168.   In addition to its own violations of law, SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

169.   Plaintiff has standing to bring this claim because he has lost money or property as a result of the acts and practices alleged herein.

170.   The UCL defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice, and prohibits such conduct. Beginning on an exact date unknown to Plaintiff, but at all times relevant herein, SUNNOVA and its agents committed and are continuing to commit acts of unfair competition proscribed by the UCL, including the practices alleged herein.

171.   The business acts of SUNNOVA, as hereinabove alleged, constitute unlawful business practices in that the acts and practices violate Civil Code §1750 *et seq*.; Civil Code §1689.5 *et seq*; Civil Code §1788 *et seq*.; Business and Professions Code §7150 *et seq*. and Welfare & Institutions Code §15610.07, *et seq*.

172.   The business acts of SUNNOVA, as hereinabove alleged also constitute unlawful practices under federal law in at least four respects:

    a)  SUNNOVA has engaged in unfair acts and practices with regard to originating loans and servicing loans to customers who did not authorize them in violation of 12 U.S.C. §§5531(a) and 5536(a)(1)(B);

    b)  SUNNOVA has engaged in unfair acts and practices by structuring its loan origination and servicing activities in a manner that enables, facilitates and allows unauthorized loans in violation of 12 U.S.C. §§5531(a) and 5536(a)(1)(B);

c) SUNNOVA has violated the FCRA's Red Flags Rule by failing to develop and implement a written Identity Theft Prevention Program that is designed to detect, prevent, and mitigate identity theft in connection with the opening of a covered account or any existing covered account, 16 C.F.R. §681.1(d)(1); and SUNNOVA has obtained and used consumer reports without a permissible purpose, in violation of the FCRA, 15 U.S.C. §1681b(f); and

d) SUNNOVA has violated Federal Trade Commission Holder in Due Course rule, 16 C.F.R. §433, *et seq.* by failing to include the requisite holder language it is form contract. By failing to include the requisite language in its form contract, SUNNOVA systematically misleads customers as to the status and the obligations as to their legal rights under the contract.

173.   The business acts and practices of SUNNOVA, as hereinabove alleged, constitute unfair business practices in that the acts and practices offend public policy and are substantially injurious to consumers. The acts and practices have no utility that outweighs the substantial harm to consumers.

174.   The business acts and practices of SUNNOVA as hereinabove alleged, constitute fraudulent business practices in that the acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations and avoid mandated disclosures; and by use of such deception, induce consumers to enter transactions which they otherwise would decline. The practices alleged are fraudulent and unfair, constituting deceptive practices which were predatory under the circumstances set forth herein.

175.   The unlawful, unfair, and fraudulent business acts and practices described herein present a continuing threat in that SUNNOVA and its agents are currently engaging in such acts and practices and will persist and continue to do so unless

and until an injunction is issued by the Court.

176.   Pursuant to Business and Professions Code § 17203, Plaintiff seeks a public injunction for the unlawful, unfair, and fraudulent engaged in by SUNNOVA and its agents.

177.   Plaintiff is entitled to restitution of all amounts taken by SUNNOVA and its agents.

178.   Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action under Code of Civil Procedure §1021.5 because:

a)   A successful outcome in this action will result in the enforcement of important rights affecting the public interest by protecting the general public from unfair, unlawful, and deceptive practices.

b)   This action will result in a significant public benefit by compelling SUNNOVA to comply with the law.

c)   Unless this action is prosecuted, SUNNOVA's activities will go unremedied and will continue unabated.

d)   Plaintiff is an individual of modest means with limited access to the courts and the civil justice system. Unless attorneys' fees, costs and expenses are awarded against SUNNOVA, Plaintiff will not recover the full measure of his loss.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

(1)   An award of actual damages, including but not limited to, emotional distress damages;

(2)   An award of general damages;

(3)   An award of punitive damages;

(4)   An award of statutory damages;

(5)     An award of nominal damages;

(6)     An award of civil penalty;

(7)     An award of restitution;

(8)     An order finding and declaring that any alleged contracts between Plaintiff and SUNNOVA and its agents have been cancelled and are void;

(9)     An order finding and declaring that the solar panels affixed to Plaintiff's home are the property of Plaintiff without obligation to pay for them;

(10)   An order finding and declaring that SUNNOVA's acts and practices challenged herein are unlawful, unfair, and fraudulent;

(11)   A comprehensive public injunction barring SUNNOVA from engaging in the unlawful, unfair, and fraudulent business practices challenged herein and compelling SUNNOVA to conform their conduct to the requirements of the law;

(12)   Prejudgment interest at the maximum legal rate;

(13)   An award of attorneys' fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action; and

(14)   Any other and further relief as this Court shall deem just and proper.

Dated: October 30, 2023                    KEMNITZER, BARRON & KRIEG, LLP


                                           By:   /s/ Kristin Kemnitzer
                                                 KRISTIN KEMNITZER
                                                 ADAM J. MCNEILE
                                                 MALACHI J. HASWELL

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 30, 2023                    KEMNITZER, BARRON & KRIEG, LLP


                                           By:   /s/ *Kristin Kemnitzer*
                                                 KRISTIN KEMNITZER
                                                 ADAM J. MCNEILE
                                                 MALACHI J. HASWELL