1  Ryan G. Baker (Bar No. 214036)
     rbaker@waymakerlaw.com
2  Teresa L. Huggins (Bar No. 263257)
     thuggins@waymakerlaw.com
3  Kevin M. Casey (Bar No. 338924)
     kcasey@waymakerlaw.com
4
5  WAYMAKER LLP
   515 S. Flower Street, Suite 3500
6  Los Angeles, California 90071
   Telephone: (424) 652-7800
7  Facsimile:  (424) 652-7850
8
9  *Attorneys for Defendant*
   *Sunnova Energy Corporation*
10

11              **UNITED STATES DISTRICT COURT**

12     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14  BENJAMIN MARTINEZ,                    | Case No. 5:23-cv-02233-MWF-BFM

15              Plaintiff,

16                                        | **SUNNOVA ENERGY**
     v.                                   | **CORPORATION'S NOTICE OF**
17                                        | **MOTION AND MOTION TO**
                                          | **DISMISS COMPLAINT**
18  SUNNOVA ENERGY                        | **PURSUANT TO FEDERAL RULE**
    CORPORATION; and DOES 1               | **OF CIVIL PROCEDURE 12(b)(6)**
19  through 20, inclusive,
20
                                          | The Honorable Michael W. Fitzgerald
21              Defendant.
22                                        | Complaint Filed: October 30, 2023
23
24                                        | Hearing:  February 12, 2024
                                          | Time:  10:00 a.m.
25

26

27

28

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 12, 2024, at 10:00 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Michael W. Fitzgerald, located in the First Street Courthouse, 350 West First Street, Courtroom 5A, Los Angeles, California 90012, Defendant Sunnova Energy Corporation will and hereby does move this Court to dismiss the Complaint in this matter. This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state a claim upon which relief can be granted.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 27, 2023.

This Motion is made and based upon the following Memorandum of Points and Authorities, any matters of which this Court may take judicial notice, papers on file herein and other such arguments and evidence as may be presented at the time of the hearing on this matter, if any.

DATED:  January 8, 2024          WAYMAKER LLP


By:  /s/ *Teresa L. Huggins*
     Ryan G. Baker
     Teresa L. Huggins
     Kevin M. Casey
     *Attorneys for Defendant for*
     *Sunnova Energy Corporation*

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................... 3

    A.   Sunnova Partners With Third-Party Installers and Contractors ............... 3

    B.   Greenspire Salesmen Attempt To Sell Plaintiff a Solar System ............. 3

    C.   Plaintiff Agrees To Have a Solar System Installed Based on Statements Allegedly Made By the Greenspire Salesmen ......................................... 5

    D.   Plaintiff Sues Sunnova for the Purported Actions of Greenspire ............ 7

III.   LEGAL STANDARD ............................................................................. 8

IV.    ARGUMENT .......................................................................................... 8

    A.   The Fraudulent Concealment Claim Fails (First Cause of Action) ........... 8

        1.   Plaintiff Fails To Allege Sunnova Concealed A Material Fact On Which He Detrimentally Relied ....................................... 9

        2.   Plaintiff Does Not Allege Any Secondary Liability ....................... 11

        3.   The Allegations Against Sunnova under the "Holder Rule" Fail ..... 14

    B.   The Negligence Claim (Second Cause of Action) Is Also Deficient ...... 15

    C.   Plaintiff Fails to State a Claim for Violations of the CLRA and UCL (Third and Eighth Causes of Action) .................................................. 17

    D.   The Elder Abuse Act Claim Fails (Fourth Cause of Action) ................. 21

    E.   The Rosenthal Act Claim Is Too Conclusory To Survive a Motion to Dismiss (Fifth Cause of Action) ....................................................... 23

    F.   Plaintiff's HSSA Claim Fails (Sixth Cause of Action) ......................... 23

    G.   Plaintiff Fails to State a Claim under Business and Professions Code section 7150, *et seq*. (Seventh Cause of Action) .................................... 24

V.     CONCLUSION .................................................................................... 25

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

1

## **TABLE OF AUTHORITIES**

2

3

**Cases**

4
*Armstrong v. Accrediting Council*,
 832 F. Supp. 419 (D.D.C. 1993)......................................................15

5
*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)........................................................8, 25

6

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
7
 33 Cal. App. 5th 70 (2019) ......................................................11

8
*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ......................................................8

9

*Brazil v. Dole Packaged Foods, LLC*,
10
 660 F. App'x 531 (9th Cir. 2016) ......................................................19

11
*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
 213 F.3d 474 (9th Cir. 2000) ......................................................13

12

*C.F.P.B. v. CashCall, Inc.*,
13
 35 F.4th 734 (9th Cir. 2022) ......................................................19

14
*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
 20 Cal. 4th 163 (1999) ......................................................21

15

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
16
 751 F.3d 990 (9th Cir. 2014) ......................................................8

17
*Friedman v. Mercedes Benz USA LLC*,
 No. 12-cv-7204 GAF,
18
 2013 WL 8336127 (C.D. Cal. June 12, 2013)......................................................14

19
*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*,
 148 Cal. App. 4th 937 (2007) ......................................................11

20

*Glanton v. DirecTV, LLC*,
21
 172 F. Supp. 3d 890 (D.S.C. 2016) ......................................................20

22
*Gomez v. Bank of America, N.A.*,
 No. CV 12-8704-GHK (SHx),
23
 2013 WL 12166189 (C.D. Cal. 2013) ......................................................14

24
*Graham v. Bank of Am., N.A.*,
 226 Cal. App. 4th 594 (2014) ......................................................9, 10

25

*Hanson v. Am. W. Airlines, Inc.*,
26
 544 F. Supp. 2d 1038 (C.D. Cal. 2008) ......................................................13

27
*Haroutoonian v. NewRez, LLC*,
 No. SACV 22-00751-CJC (JDEx),
28
 2023 WL 2626970 (C.D. Cal. Jan. 10, 2023)......................................................23

*Holloway v. Bristol–Myers Corp.*,
  485 F.2d 986 (D.C. Cir. 1973) .................................................................... 15

*In re Anthem, Inc. Data Breach Litigation*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................................ 19

*In re Jamster Marketing Litig.*,
  No. 05cv0819 JM(CAB),
  2009 WL 1456632 (S.D. Cal. May 22, 2009) ............................................. 18

*Inglewood Tchrs. Assn. v. Pub. Emp. Rels. Bd.*,
  227 Cal. App. 3d 767 (1991) ....................................................................... 11

*Ira Potovsky, et al. v. Lincoln Benefit Life*,
  No. 23-cv-02235-WHO,
  2023 WL 8461171 (N.D. Cal. Dec. 6, 2023) .............................................. 22

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ........................................................ 14

*Korotki v. Attorney Serv. Corp.*,
  931 F. Supp. 1269 (D. Md. 1996) ............................................................... 20

*Kuehl v. General Motors, LLC*,
  No. 2:23-cv-06980-SB-SK,
  2023 WL 8353784 (C.D. Cal. Nov. 17, 2023) ........................................... 12

*London v. Wells Fargo Bank,*
  *N.A.*, No. 2:17–cv–00687–KJM–AC,
  2018 WL 621262 (E.D. Cal. Jan. 29, 2018) ............................................... 23

*Malloy v. Fong*,
  37 Cal. 2d 356 (1951) .................................................................................. 11

*McFarland v. Bob Saks Toyota, Inc.*,
  466 F. Supp. 2d 855 (E.D. Mich. 2006) ..................................................... 20

*Meyer v. Sprint Spectrum, L.P.*,
  45 Cal. 4th 634 (2009) ................................................................................ 18

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) .................................................................... 12

*Moran v. Bromma*,
  675 Fed. Appx. 641 (9th Cir. 2017) ........................................................... 22

*Nordeman v. Dish Network LLC*,
  525 F. Supp. 3d 1080 (N.D. Cal. 2021) ...................................................... 24

*Peredia v. HR Mobile Services, Inc.*,
  25 Cal. App. 5th 680 (2018) ....................................................................... 15

*Pica v. Wachovia Mortg.*,
  No. 2:09–cv–02372–GEB–KJN,
  2010 WL 1525069 (E.D. Cal. Apr. 15, 2010) ............................................ 23

iii

*Prudencio v. Midway Importing, Inc.*,
831 F. App'x 808 (9th Cir. 2020) .............................................................. 18

*Retired Employees Assn. of Orange County, Inc. v. County of Orange*,
52 Cal. 4th 1171 (2011) ................................................................... 9, 16

*Rothschild v. Tyco Internat. (US), Inc.*,
83 Cal. App. 4th 488 (2000) ................................................................... 19

*Ruhnke v. SkinMedica, Inc.*,
No. SACV 14-0420-DOC (JPRx),
2014 WL 12577172 (C.D. Cal. Sept. 5, 2014) ......................................... 13

*Rydell v. Servco Auto Windward*,
No. 11–00485,
2011 WL 5506088 (D. Haw. Nov. 9, 2011) ............................................ 20

*Sandry v. First Franklin Financial Corp.*,
No. 1:10–cv–01923–OWW–SKO,
2011 WL 202285 (E.D. Cal. 2011) ....................................................... 16

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012) ........................................................... 17, 18

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125 (2020) ............................................................. 17

*Shah v. Collecto, Inc.*,
No. CIV 2004–4059,
2005 WL 2216242 (D. Md. Sept. 12, 2005) ............................................ 20

*Smith v. State Farm Mutual Automobile Ins. Co.*,
93 Cal. App. 4th 700 (2001) ............................................................... 19

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ................................................................. 8

*Stebley v. Litton Loan Servicing, LLP*,
202 Cal. App. 4th 522 (2011) ............................................................. 22

*Stevens v. Sup. Ct.*,
75 Cal. App. 4th 594 (1999) ............................................................... 21

*Top Trade v. Grocery Outlet*,
No. 2:17-cv-08467-SVW-MRW,
2018 WL 6038292 (C.D. Cal. Feb. 22, 2018) ......................................... 16

*Varela v. Wells Fargo Home Mortg.*,
No. C–12–3502 KAW,
2012 WL 6680261,  (N.D. Cal. Dec. 21, 2012) ....................................... 14

*Veera v. Banana Republic, LLC*,
6 Cal. App. 5th 907 (2016) ............................................................... 17

NOTICE OF MOTION AND MOTION TO DISMISS

*Vietnam Veterans of America Inc. v. Guerdon Industries, Inc.,*
  644 F. Supp. 951 (D. Del. 1986) .................................................................15, 21

*Wallis v. Centennial Ins. Co.,*
  927 F. Supp. 2d 909 (E.D. Cal. 2013), ................................................................13

*White v. E-Loan, Inc.,*
  409 F. Supp. 2d 1183 (N.D. Cal. 2006)................................................................21

*Wilens v. TD Waterhouse Group, Inc.,*
  120 Cal. App. 4th 746 (2003) ..............................................................................17

*Williams v. Nat. School of Health Technology, Inc., et al.,*
  836 F. Supp. 273 (E.D. Pa. 1993)........................................................................15

**Statutes**

12 U.S.C. § 5531(a) ..................................................................................................19

12 U.S.C. § 5536(a)(1)(B) ........................................................................................19

15 U.S.C. § 1681b(f).............................................................................................19, 20

15 U.S.C. § 1681m(e), (h) ........................................................................................21

16 C.F.R. § 433..................................................................................................14, 19

16 C.F.R. § 681.1(d)(1) .............................................................................................19, 21

Bus. & Prof. Code § 7150, *et seq.* .........................................................................2, 8, 24

Bus. & Prof. Code § 7159 ..................................................................................24, 25

Bus. & Prof. Code §7161...................................................................................24, 25

Bus. & Prof. Code § 17200, *et seq.* ..........................................................................8

Cal. Civ. Code § 1621................................................................................................9

Cal. Civ. Code § 1689.5.............................................................................................8

Cal. Civ. Code § 1689.6............................................................................................24

Cal. Civ. Code § 1689.7(a)(1)(c) ..............................................................................24

Cal. Civ. Code § 1770, *et seq.* ..................................................................................8

Cal. Civ. Code § 1788, *et seq.* ...........................................................................2, 8, 23

Cal. Civ. Code § 2300...............................................................................................13

Cal. Civ. Code §§ 7151, 7151.2................................................................................24

Welf. & Instit. Code §15600, *et seq* .........................................................................8

Welf. & Instit. Code § 15610.30(a), (b) ................................................................2, 21

NOTICE OF MOTION AND MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiff Benjamin Martinez's ("Plaintiff's") Complaint exemplifies form over substance. The lengthy pleading passes the "heft test," but what is missing from Plaintiff's painstaking description of Defendant Sunnova Energy Corporation's ("Sunnova's") purported "Program" is any allegation that would give rise to Sunnova's liability for any purported misconduct – Plaintiff's allegations, even taken as true, do not support a finding of liability against Sunnova directly or indirectly. Because Plaintiff fails to allege any valid cause of action against Sunnova, the only named defendant, the Complaint should be dismissed.

Plaintiff alleges Sunnova partners with third-party solar panel installation contractors to "arrange" financing for solar panels through electronic contracts and "on-the-spot" approval. Plaintiff then simply alleges that this practice – used by countless companies across the country to finance everything from cell phones to cars – means Sunnova is now liable for any and all purported misrepresentations made by the salesmen of one such solar panel installation contractor, Greenspire LLC ("Greenspire"). Notably, Plaintiff does not sue Greenspire or any of its salesmen for their purported acts. Instead, Plaintiff goes after the presumably deeper pockets and sues Sunnova alone. But Plaintiff provides no factual allegations that Sunnova misrepresented or concealed anything from him. In fact, according to the Complaint, Sunnova had no contact with Plaintiff until months *after* he had agreed to the installation of solar panels (the "Solar System") on his roof. Nor does Plaintiff provide any factual allegations whatsoever to show that Sunnova exercised any control over Greenspire or its salesmen, as it must for liability to attach to Sunnova under an agency theory. To the contrary, Plaintiff *admits* Sunnova failed to exercise such control. Six of Plaintiff's eight claims fail on this basis alone.

Indeed, Plaintiff's claims for fraudulent concealment (First Cause of Action) and negligence (Second Cause of Action) fail because Plaintiff fails to allege Sunnova concealed or suppressed any material fact. Plaintiff alleges he agreed to

NOTICE OF MOTION AND MOTION TO DISMISS

have the Solar System installed solely based on statements that Greenspire salesmen made to him and that he had no contact with Sunnova until months after the installation, making detrimental reliance on anything Sunnova said or did impossible. Moreover, when Plaintiff finally did interact with Sunnova, Plaintiff's allegations demonstrate Sunnova was at all times forthcoming, openly seeking payment under a written contract ("Agreement") and promptly sending Plaintiff the full Agreement as soon as he asked. Nor does Plaintiff allege that Sunnova had the requisite control (or any control) over Greenspire or its salesmen such that Sunnova can be held liable for their acts under an agency theory. Instead, Plaintiff alleges that Sunnova "exercises virtually no control over [the] activities" of third-party solar panel installation contractors like Greenspire.

Plaintiff's CLRA (Third Cause of Action) and UCL (Eighth Cause of Action) claims similarly fail for failure to allege detrimental reliance. Plaintiff fails to allege that anything Sunnova said or did induced him to agree to the Solar System installation; vicarious liability is not allowed under either statute.

Plaintiff's Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Instit. Code §15610.30, claim (Fourth Cause of Action) fails for failure to allege any wrongful taking by Sunnova. At best, Plaintiff alleges Sunnova attempted to collect what it reasonably understood to be a legitimate debt, which is insufficient to state a claim under the statute as a matter of law. Plaintiff's Business and Professions Code § 7150, *et seq*., claim (Seventh Cause of Action) likewise fails because it is wholly dependent on Plaintiff's deficient agency theory.

The sole two direct claims against Sunnova also fail. The Rosenthal Fair Debt Collection Practice Act, Cal. Civ. Code §1788, claim (Fifth Cause of Action) fails for failure to allege Sunnova committed a debt collection act that violates the statute. The Home Solicitation Sales Act claim (Sixth Cause of Action) fails because Plaintiff does not allege when or how he purportedly cancelled the contract.

The Court should dismiss Plaintiff's deficient Complaint in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Sunnova Partners With Third-Party Installers and Contractors

Plaintiff alleges Sunnova Energy Corporation engages in a purported "Sunnova Program," in which Sunnova allegedly "partners" with third-party "solar panel installation contractors" like Greenspire LLC to "sell customers solar panels and arrange financing for the purchase of the solar panels through SUNNOVA loans." (Compl. ¶¶ 21, 23, 26.) As part of this purported program, Sunnova allegedly "vests its own sales agents and the sales agents of its partners like Greenspire with the authority to obtain nonpublic Personally Identifiable Information ('PII') from consumers and to submit loan applications on their behalf" and provides "on-the-spot approval of the loan applications that they submit through an electronic, paperless process." (*Id*. ¶¶ 24-25.) Plaintiff claims Sunnova "retains a portion of every loan generated by the sales agents of its partners to cover its fees and charges," and that both Sunnova "and the partner contractors financially benefit from every loan generated by its own sales agents and the sales agents of the partners like Greenspire." (*Id*. ¶ 26.) Plaintiff then alleges that Sunnova "exercises virtually no oversight over [the third-party contractor's] activities." (*Id*. ¶ 29.)

### B.   Greenspire Salesmen Attempt To Sell Plaintiff a Solar System

According to the Complaint, sometime in June 2022, "a man named Jonathan Correa and another man whose name is unknown came to Plaintiff's door unannounced" and told Plaintiff that they were "offering a program that could save him lots of money each month on his energy bill." (Compl. ¶¶ 49-50.) Plaintiff alleges "[t]he salesmen did not tell Plaintiff that they were with either Greenspire or SUNNOVA." (*Id*. ¶ 49) Nevertheless, Plaintiff claims the two salesmen were "agents of SUNNOVA who, unbeknownst to Plaintiff, was operating through its contractor/installer partner Greenspire." (*Id*.) Plaintiff does not say how or when he discovered that Correa and his companion were purportedly "agents of

SUNNOVA," or on what basis he makes the claim, given that the salesmen failed to identify themselves as associated with any company. (*See id*.)

Plaintiff further alleges that, "[i]n Spanish, the salesmen told Plaintiff that they were offering a program that could save him lots of money each month on his energy bill" and "asked to see Plaintiff's current energy bills." (Compl. ¶ 50.) In response, Plaintiff "produced two Southern California Edison bills, one for $139 and the other for $148." (*Id*.) "One of the salesmen copied down some information from the bills into his notebook, but Plaintiff could not see what information he had copied." (*Id*.) Plaintiff does not allege that he asked what information the salesman copied or why. Plaintiff claims the salesmen told him "they could provide and install solar panels for free, and that thereafter he would only be paying $105 each month for his energy bill." (*Id*. ¶ 51.) At this point, Plaintiff still "did not know what company the salesmen were representing," but "[t]he salesmen said they would need to return to see if Plaintiff qualified for the program, a process they described as checking his roof and electrical box for compatibility." (*Id*.) Plaintiff does not say if he agreed to have the salesmen return.

"Several weeks after the initial visit," the salesmen did in fact return and Plaintiff allegedly "told them he was no longer interested in the solar panels." (Compl. ¶ 54.) However, Plaintiff alleges that, after the salesmen told him "the solar panels would be provided and installed for free and that he would, in short order, be saving considerable sums each month on his energy bill," Plaintiff allowed "the salesmen to scale his roof and check his electrical box, which they informed him were compatible for the solar panel system." (*Id*.) During this visit, "Plaintiff [allegedly] witnessed one of the salesmen using the tablet computer they brought, before switching to his cell phone and working on that." (*Id*. ¶ 55.) Plaintiff does not allege that he asked the salesmen about the tablet or made any inquiries whatsoever, including any inquiry regarding a written contract. According to Plaintiff, "[t]he

NOTICE OF MOTION AND MOTION TO DISMISS

salesmen never presented Plaintiff with any type of physical or electronic documentation and Plaintiff never signed anything." (*Id*.)

Plaintiff admits he "again expressed interest in the savings the salesmen promised and the solar panel system that they promised would be provided and installed for free." (*Id*.) He then alleges that "[t]he salesmen told Plaintiff they would return in several weeks for the installation." (*Id*.) Again, Plaintiff does not allege that the salesmen ever identified themselves with any particular company; and nowhere does Plaintiff allege he inquired or understood who they worked for.

### C.    Plaintiff Agrees To Have a Solar System Installed Based on Statements Allegedly Made By the Greenspire Salesmen

An undisclosed number of "[m]onths passed" and "installers appeared at [Plaintiff's] home in October 2022." (Compl. ¶ 56.) These men "did not speak Spanish" and Plaintiff allegedly "had no ability to contact the salesmen" he had originally spoken to, given that he "did not know what company they worked for and had not been provided any contact information for them." (*Id*.) Plaintiff alleges he nevertheless "allowed the installers to proceed" with the installation. (*Id*.) Plaintiff alleges he "relied on the promises that the panels were free and he would thereafter only be paying a fixed monthly energy bill of $105," as the Greenspire salesmen had purportedly told him. (*Id*.)

An undisclosed number of "months after the panels were installed, Plaintiff began receiving [allegedly] harassing phone calls saying he was $918 past due on his energy bill." (Compl. ¶ 57.) Plaintiff does not allege how many such phone calls he received, why he found the phone calls "harassing" or what more was said on the calls. Plaintiff alleges that he "did not understand who was calling him, and still had no idea that SUNNOVA or Greenspire existed, as he had never seen let alone signed any kind of document identifying the companies." (*Id*.) Nevertheless, Plaintiff alleges that, "[b]ecause Southern California Edison had always been Plaintiff's energy provider, and because a Southern California Edison bill arrived around the

time some of the calls from SUNNOVA were received, [Plaintiff] assumed the amount was due to Southern California Edison and he promptly paid Southern California Edison $918." (*Id*.) Plaintiff does not allege if he was ever sent a physical bill, or if he ever asked for one to be sent to him during any of these phone calls. Plaintiff also does not state if these phone calls were in English or Spanish, if he understood the content of them, or if he asked any questions on the calls.

Plaintiff alleges the purportedly "harassing debt collection phone calls, however, persisted." (Compl. ¶ 58.) But Plaintiff does not say how many phone calls he received, what was said on them, or why he found them "harassing." Plaintiff then claims to have "enlisted the assistance of a neighbor, who helped him figure out" in some undisclosed way "that a company called SUNNOVA was who was calling." (*Id*.) Plaintiff then "promptly paid the $918 to SUNNOVA to avoid the [allegedly] harassing calls and damage to Plaintiff's credit and to prevent any formal debt collection proceedings." (*Id*.) According to Plaintiff, he "paid *both* Southern California Edison  *and* SUNNOVA *each* $918," but does not explain why he elected to pay both entities or if he made any effort to clear up the situation and get his money back from Southern California Edison. (*Id*. (emphasis in original).)

At some undisclosed time, "Plaintiff's daughter contacted SUNNOVA and helped Plaintiff obtain, for the first time, a copy of the alleged contract" (the "Agreement"). (Compl. ¶ 59.) Plaintiff alleges he received the Agreement in June 2023 in English, such that he "could not have read it even if he had seen the contract in June 2022." (*Id*. ¶¶ 59, 64.) As alleged, "someone named 'Madeline Arteaga' is listed as the signatory for Greenspire"; and an unspecified, undated "search of the Contractor State License Board ('CSLB') website lists her as both employed by 'Rayker Inc. dba Greenspire Construction' and SUNNOVA." (*Id*. ¶ 60.) However, as of the date of this filing, a search of that same website failed to list a "Madeline Arteaga." Plaintiff alleges the Agreement "states that it was assigned to SUNNOVA and executed by SUNNOVA authorized signatory John Santo Salvo." (*Id*.)

NOTICE OF MOTION AND MOTION TO DISMISS

Plaintiff alleges the monthly payments in the Agreement "are $110.57 for the first eighteen months, and $163.48 for months 19-300, much more than the $105 promised and more than the electric bills Plaintiff presented to the salesmen." (Compl. ¶ 61.) Plaintiff also claims the Agreement was signed in the name "Benjamin Nieto," which is his mother's maiden name, and not Martinez, which is his last name. (*Id*. ¶ 62.) Neither Plaintiff nor anyone in his family had purportedly ever seen "the Yahoo e-mail address on the contract, martinezbenjamin455@yahoo.com," before the contract was "received for the first time in June 2023." (*Id*. ¶ 64.)

Plaintiff claims that, some undisclosed time later, he "subsequently received a mailing from Greenspire, which is how he learned that they were the company that had come to install the solar panels for SUNNOVA." (Compl. ¶ 65.) Plaintiff does not explain what this "mailing" was, when he received it or if he ever reached out to Greenspire directly in response to the mailing, but claims he "has never received any additional information regarding any alleged Greenspire contract." (*Id*.)

Plaintiff alleges, at some undisclosed time, he "attempted to cancel any purported contract(s) with SUNNOVA and Greenspire." (Compl. ¶ 66.) Plaintiff does not allege how he tried to cancel the "purported contract(s)." Plaintiff claims that "SUNNOVA and Greenspire to date have ignored Plaintiff's" undisclosed "request to cancel" the Agreement. (*Id*.)

Plaintiff alleges, without specific factual support, that "SUNNOVA continues to claim that Plaintiff is bound by contracts he never signed." (*Id*. ¶ 70.) Plaintiff claims he has spent "hours of sleep" ruminating over this conduct and fears he will not afford home repairs because Sunnova, at some undisclosed time and place and in some unspecified way, "continues to demand payments." (*Id*. ¶¶ 73-74.)

**D.    Plaintiff Sues Sunnova for the Purported Actions of Greenspire**

On October 30, 2023, Plaintiff filed a complaint against Sunnova in the Central District of California for (1) fraudulent concealment; (2) negligence;

(3) violations of the CLRA, Cal. Civ. Code § 1770, *et seq.*; (4) violations of the Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"), Welf. & Instit. § 15600, *et seq.*; (5) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et seq.;* (6) violations of the Home Solicitation Sales Act ("HSSA"), Cal. Civ. Code § 1689.5, *et seq.*; (7) violations of the Business & Profession Code § 7150, *et seq.*; and (8) violations of the Business & Professions Code § 17200, *et seq.* ("UCL"). Plaintiff did not name Greenspire, Jonathan Correa, or his companion as parties. Sunnova was served with the Complaint on November 17, 2023, and the parties agreed to a 30-day extension for its response pursuant to Local Rule 8-3. The parties met and conferred to discuss the subject of this motion on December 27, 2023, but were unable to reach agreement. This motion to dismiss follows.

## III.    LEGAL STANDARD

To survive a motion to dismiss, Plaintiff must plead facts showing that his claim is not just "conceivable" but "plausible." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept a complaint's allegations as true, that tenet is "inapplicable" to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept as true conclusory allegations or unwarranted deductions of fact. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.    ARGUMENT

### A.    The Fraudulent Concealment Claim Fails (First Cause of Action)

The elements of a fraudulent concealment claim are "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and

would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014) (citation omitted). Plaintiff here fails to allege that Sunnova concealed or suppressed any material fact that Plaintiff relied on to his detriment, or that it had the requisite intent to do so, requiring dismissal of the claim.

### 1.    Plaintiff Fails To Allege Sunnova Concealed A Material Fact On Which He Detrimentally Relied

In support of the fraudulent concealment claim, Plaintiff alleges Sunnova purportedly concealed three facts: (1) that "SUNNOVA and its agents were selling a solar installation contract and loan agreement," (2) that "SUNNOVA and its agents were placing Plaintiff in a solar installation contract with a 25-year loan," and (3) that "SUNNOVA and its agents used Plaintiff's personally identifiable information ("PII") to complete a solar installation contract and loan application in Plaintiff's name." (Compl. ¶ 81.) But Plaintiff fails to provide factual allegations to establish that Sunnova concealed or suppressed any of these facts (or any others) from him or had the requisite intent to do so.

First, Plaintiff cannot plausibly claim that Sunnova "concealed" or "suppressed" the "selling of a solar installation contract" (*see* Compl. ¶ 81a), given that Plaintiff admits that he knowingly entered such a contract. (*See id.* ¶¶ 53, 56.) Indeed, Plaintiff alleges he expressed interest in solar panels in conversations with Greenspire salesmen and then "allowed the installers to proceed" with the installation of those panels shortly thereafter. (*Id.* ¶¶ 49-56; *see Retired Employees Assn. of Orange County, Inc. v. County of Orange,* 52 Cal. 4th 1171, 1178 (2011) (The distinction between an express and implied contract "reflects no difference in legal effect but merely in the mode of manifesting assent.") (internal citations and quotations omitted); *see also* Cal. Civ. Code § 1621.

NOTICE OF MOTION AND MOTION TO DISMISS

1    To the extent Plaintiff purports to allege that Sunnova suppressed or

2    concealed the fact of a written Agreement or its terms (*i.e.*, that it was a loan for 25

3    years), those allegations, too, fail. (*See* Compl. ¶¶ 81a, b.) To the contrary, as

4    alleged, Sunnova was at all times forthcoming with Plaintiff about both. Plaintiff

5    alleges that, after he was remiss on payments under the Agreement, Sunnova called

6    him directly (*id.* ¶¶ 57-58); Plaintiff made a payment pursuant to the Agreement to

7    Sunnova in response, which Sunnova accepted (*id.* ¶ 58); and Sunnova promptly

8    provided Plaintiff with a full copy of the Agreement with all relevant terms,

9    including the fact of the 25-year loan, as soon as Plaintiff requested it (*id.* ¶¶ 57-59).

10    In short, contrary to concealing the Agreement and its terms, Plaintiff alleges that

11    Sunnova was, at all times, open with him about both, promptly answering all

12    questions and providing him with a full copy of the written Agreement as soon as he

13    asked. (*See id.*) There are no factual allegations to the contrary in the Complaint and

14    none from which an intent to defraud can be gleaned.

15    Plaintiff also fails to allege that he relied on any representation or omission by

16    Sunnova to his detriment, as he must to state a claim for fraudulent concealment.

17    *See Graham*, 226 Cal. App. 4th at 606. As alleged in the Complaint, Plaintiff had no

18    contact with Sunnova until months after he had agreed to the installation of the Solar

19    System and that system had been installed. (Compl. ¶¶ 57-60.) Plaintiff could not

20    have reasonably relied on any statements or omissions by Sunnova to agree to the

21    installation of the Solar System, given the chronology Plaintiff provides.

22    Plaintiff similarly fails to allege that Sunnova did anything to conceal or

23    suppress the fact that his personally identifiable information ("PII") was used to

24    complete the Agreement. Again, he alleges that Sunnova reached out to him about

25    payment under the Agreement and promptly provided him with a full copy of the

26    written contract containing his PII, as soon as he asked. (Compl. ¶¶ 57-59.) No

27    suppression or concealment by Sunnova of the use of Plaintiff's PII is alleged.

28

## 2.    Plaintiff Does Not Allege Any Secondary Liability

Instead, the allegations for fraudulent concealment, like almost all of the allegations in the Complaint, rely entirely on Sunnova's purported "agency" relationship with Greenspire. According to the Complaint, Greenspire salesmen alone made false statements to Plaintiff about the value of the Solar System that induced Plaintiff to agree to the installation of the Solar System and then forged his name to the Agreement, using his PII without his authorization to complete the validation. (Compl. ¶¶ 49-64.) But Plaintiff does not provide a single factual allegation to establish that Sunnova had any control over Greenspire or its salesmen such that it is liable for their actions under an agency theory.

"The essential characteristics of an agency relationship" are: "(1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964 (2007) (citations omitted). The right to control is a crucial factor, given that, "[f]or an agency relationship to exist, the asserted principal must have a sufficient right to control the relevant aspect of the purported agent's day-to-day operations." *Barenborg v. Sigma Alpha Epsilon Fraternity*, 33 Cal. App. 5th 70, 85 (2019); *Malloy v. Fong*, 37 Cal. 2d 356, 370 (1951) ("Whether a person performing work for another is an agent or an independent contractor depends primarily upon whether the one for whom the work is done has the legal right to control the activities of the alleged agent."). "The law indulges in no presumption that an agency exists but instead presumes that a person is acting for himself and not as agent for another." *Inglewood Tchrs. Assn. v. Pub. Emp. Rels. Bd.*, 227 Cal. App. 3d 767, 780 (1991) (citations omitted).

Nowhere in the Complaint does Plaintiff allege that Sunnova had the right to control or supervise the day-to-day operations of Greenspire or the salesmen who purportedly interacted with him. In fact, Plaintiff admits that Sunnova does *not* exercise such control, alleging that Sunnova "exercises virtually no oversight over [its partners'] activities." (Compl. ¶ 29.) The Complaint contains a lengthy description of what it calls the purported "Sunnova Program," in which Sunnova allegedly partners with "solar panel installation contractors," such as Greenspire, to "arrange financing for the purchase of solar panels through SUNNOVA loans" that are obtained with "on-the-spot approval" through "an electronic paperless process," using PII. (*Id.* ¶¶ 23-25.) But such allegations merely describe the commonplace practice that businesses across the country use to arrange financing for everything from cell phones to cars. There is nothing unusual about a company partnering with a third-party vendor to help consumers finance a product, and pages of allegations calling such a routine business practice a "scheme" or "program" do not make it so. Nothing in the litany of allegations of the purported "Sunnova Program" suggests Sunnova has any control over Greenspire or its salesmen. (*See* Compl. ¶¶ 21-30.)

Instead, Plaintiff asks the Court to ignore the requirement of control and accept the label of agency to attach liability to Sunnova merely because Plaintiff says it is so. But it is axiomatic that "[c]onclusory allegations of agency, without facts supporting the allegation, are insufficient to establish an agency relationship for pleading purposes." *Kuehl v. General Motors, LLC*, No. 2:23-cv-06980-SB-SK, 2023 WL 8353784, at *3 (C.D. Cal. Nov. 17, 2023) (dismissing fraudulent concealment claim where complaint failed to provide factual allegations that car dealership was the agent of the car manufacturer); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1215 (9th Cir. 2016) (finding allegations of agency relationship insufficient because Plaintiff did "not allege any facts suggesting that [the alleged principal] maintained control over [the alleged agent]'s actions, or vice versa.").

NOTICE OF MOTION AND MOTION TO DISMISS

In *Wallis v. Centennial Ins. Co.*, the plaintiff alleged that "[e]ach defendant was an agent, employee, servant, partner, and/or joint venture of the remaining defendant, and all the acts complained of herein were done within the course and scope of said agency, employment, servitude, partnership and/or joint venture," 927 F. Supp. 2d 909, 916 (E.D. Cal. 2013), similar to Plaintiff's conclusory allegations, upon information and belief, that "each Defendant . . . was the principal, agent (actual or ostensible), or employee of each other Defendant" (Compl. ¶ 14). The *Wallis* court found that "[s]uch bare legal conclusions are insufficient to show that [defendants] are in an agency relationship, partners, and/or in a joint venture" and dismissed the claims against the purported principal that were based on allegations of an agency relationship. *Wallis*, 927 F. Supp. 2d at 916-18; *see also Ruhnke v. SkinMedica, Inc.*, No. SACV 14-0420-DOC (JPRx), 2014 WL 12577172, at *11 (C.D. Cal. Sept. 5, 2014) (granting motion to dismiss where plaintiff failed to allege the "nature of the control exercised" by the principal and the claims thus "amount to nothing more than a legal conclusion which is insufficient").

Further, to the extent Plaintiff is alleging an agency relationship on the basis of apparent or ostensible authority, the Complaint is also insufficient. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." *See* Cal. Civ. Code § 2300. "Only the acts of the principal, not of the agent, give rise to apparent authority." *Hanson v. Am. W. Airlines, Inc.*, 544 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008) (citing *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir. 2000)).

Plaintiff provides no allegations that anyone concealed any facts that would reasonably lead him to believe that anyone at Greenspire was acting as Sunnova's agent. To the contrary, Plaintiff alleges that the "salesmen did ***not*** tell Plaintiff that they were with either Greenspire or SUNNOVA" (Compl. ¶ 49 (emphasis added))

13

1    and that he had no idea that Sunnova even existed until months *after* he had agreed

2    to have the Solar System installed (*id*. ¶¶ 57, 59).

3          In the analogous context of lenders and mortgage brokers, district courts have

4    routinely rejected conclusory allegations of agency similar to what is alleged here.

5    *See, e.g., Gomez v. Bank of America, N.A*., No. CV 12-8704-GHK (SHx), 2013 WL

6    12166189, at *6 (C.D. Cal. 2013) ("conclusory labeling" of mortgage broker as

7    lender's agent "insufficient to allege an agency relationship"); *Varela v. Wells*

8    *Fargo Home Mortg*., No. C–12–3502 KAW, 2012 WL 6680261, at *6 (N.D. Cal.

9    Dec. 21, 2012) (rejecting allegations that bank was responsible for false information

10   on loan application where the complaint alleged that bank "had access to the loan

11   application and benefitted from the broker's actions" but contained no allegations to

12   "show that [the bank] caused Plaintiffs to believe that the broker was acting as its

13   agent"); cf. *Friedman v. Mercedes Benz USA LLC*, No. 12-cv-7204 GAF, 2013 WL

14   8336127, at *6 (C.D. Cal. June 12, 2013) (finding allegation that "Keyes, an

15   authorized Mercedes dealership, served as Mercedes' agent" inadequate to state a

16   claim for fraud under agency theory); *Keegan v. Am. Honda Motor Co*., 838 F.

17   Supp. 2d 929, 953 (C.D. Cal. 2012) (rejecting allegation that "'Honda's dealers' 'are

18   its agents' as conclusory "legal conclusion"). No factual allegations that Sunnova

19   had the requisite control over Greenspire or that anyone led Plaintiff to believe that

20   Greenspire was acting on behalf of Sunnova are remotely present here.

21          **3.    The Allegations Against Sunnova under the "Holder Rule" Fail**

22          Plaintiff's Hail Mary attempt to attach liability to Sunnova for fraudulent

23   concealment with the conclusory allegation that "SUNNOVA is subject to all claims

24   and defenses that Plaintiff has against Greenspire as the holder in due course" fares

25   no better. (*See* Compl. ¶ 80.) Plaintiff alleges that Sunnova purportedly violated the

26   FTC's Holder in Due Course rule, 16 C.F.R. § 433, ("Holder Rule") by not having

27   certain language in the Agreement and that Sunnova is thus liable to Plaintiff for

28   everything Greenspire allegedly said or did. (*See id*. ¶¶ 11-13.) But a plaintiff has no

rights under the Holder Rule if, as Plaintiff alleges here, the notice is omitted from the contract. *See Armstrong v. Accrediting Council*, 832 F. Supp. 419, 432 (D.D.C. 1993) ("as the Holder Rule's notice was not included in plaintiff's GSL contract, plaintiff has no right to enforce its terms"); *accord Williams v. Nat. School of Health Technology, Inc., et al.*, 836 F. Supp. 273, 283 (E.D. Pa. 1993) (citing *Vietnam Veterans of America Inc. v. Guerdon Industries, Inc*., 644 F. Supp. 951, 964–65 (D. Del. 1986)). Further, there is no private cause of action under the Holder Rule, and Plaintiff may not circumvent this fact by asserting common law causes of action based on the same rule. *See Armstrong*, 832 F. Supp. at 432; *Williams*, 836 F. Supp. at 283. Rather, enforcement of the rule is the sole province of the FTC. *Holloway v. Bristol–Myers Corp*., 485 F.2d 986, 1002 (D.C. Cir. 1973). The "Holder Rule" is insufficient to state a claim against Sunnova for fraudulent concealment as a matter of law. The fraudulent concealment claim should be dismissed.

### B.    The Negligence Claim (Second Cause of Action) Is Also Deficient

"The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages." *Peredia v. HR Mobile Services, Inc*., 25 Cal. App. 5th 680, 687 (2018). In support of his negligence claim, Plaintiff alleges Sunnova purportedly concealed or suppressed the same set of facts: (1) that "SUNNOVA and its agents were selling a solar installation contract and loan agreement," (2) that "SUNNOVA and its agents accessed and intended to use the PII of Plaintiff to submit a loan application for Plaintiff," (3) that "SUNNOVA and its agents were placing Plaintiff in a solar installation contract," and (4) that "SUNNOVA was placing Plaintiff in a loan agreement." (Compl. ¶ 89.) Plaintiff's negligence claim fails for the same reason his fraudulent concealment claim fails.

First, allegations that Sunnova concealed or suppressed the sale of a "solar installation contract" necessarily fail, given Plaintiff's allegations that he knowingly agreed to have the Solar System installed on his roof. (*See* Compl. ¶ 56.) Nor could anything Sunnova said or did related to the installation have caused Plaintiff

NOTICE OF MOTION AND MOTION TO DISMISS

damage, given that Plaintiff alleges that Sunnova did not have any interaction with
him until months *after* he had agreed to the Solar System installation. (*Id.* ¶¶ 56-60);
*see also Retired Employees Assn. of Orange County, Inc.,* 52 Cal. 4th at 1178
(express and implied contract have same legal effect). Nor does Plaintiff allege that
Sunnova concealed or suppressed the fact of the Agreement, its terms or that his PII
was used to complete it. To the contrary, Plaintiff alleges that Sunnova was at all
times forthcoming with Plaintiff, directly contacting him about payment under the
Agreement and sending him the full written Agreement, replete with his PII, as soon
as he asked. (*See* Compl. ¶¶ 57-59.)

Moreover, like Plaintiff's fraudulent concealment claim, the negligence claim
fails because Plaintiff fails to allege, except in the most conclusory fashion, that
Greenspire or its salesmen were agents of Sunnova. There are no allegations that
Sunnova had any control over Greenspire or its salesmen or reason to know of their
purported acts and conclusory allegations of agency are insufficient to allege
negligence as a matter of law. *See Top Trade v. Grocery Outlet,* No. 2:17-cv-08467-
SVW-MRW, 2018 WL 6038292, at *2 (C.D. Cal. Feb. 22, 2018) (dismissing
negligence claim based on agency theory where counterclaimant failed to plead
sufficient factual allegations as to "*how* [counterdefendant] failed to exercise
ordinary care or *how* [counterdefendant] was negligent with regard to its email
security practices") (emphasis in original); *Sandry v. First Franklin Financial
Corp.*, No. 1:10–cv–01923–OWW–SKO, 2011 WL 202285, *5 (E.D. Cal. 2011)
(dismissing negligence claim on motion to dismiss where "conclusory allegations"
failed to allege defendant financial institution "had reason to know that plaintiffs'
loan application contained false information"); (*see* Section IV.A.2., *infra*.)

Finally, Plaintiff's claim that Sunnova is purportedly "subject to all claims
and defenses that Plaintiff has against Greenspire as the holder in due course"
(Compl. ¶ 88) fails because there is no private right of action under the Holder Rule

and Plaintiff cannot circumvent that fact by trying to allege common law negligence based on the same rule. (*See* Section IV.A.3., *infra*.)

**C.     Plaintiff Fails to State a Claim for Violations of the CLRA and UCL (Third and Eighth Causes of Action)**

A person has standing to bring a claim under the CLRA and UCL if he "establishes that (1) [he] has suffered economic injury or damage, and (2) this injury or damage was the result of, *i.e., caused by*, the unfair business practice. . . or the CLRA violation that is the gravamen of [his] claim." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020) (internal citations and quotations omitted) (emphasis in original) (upholding dismissal of CLRA and UCL claims with prejudice where plaintiff failed to allege reliance); *see also Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 916 (2016) ("the standing requirements of the CLRA are essentially identical to those of the UCL"). To prove the second element of causation, the plaintiff must show that he "actual[ly] reli[ed]" on the "allegedly deceptive or misleading statements'" and that it "was an immediate cause'" of his injury. *Shaeffer*, 44 Cal. App. 5th at 1137 (internal quotations omitted.) In other words, the CLRA, like the UCL, "does not create an automatic award of statutory damages upon proof of an unlawful act." *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003). Rather, relief "is specifically limited to those who suffer damage [as a result of the unlawful act], making causation a necessary element of proof." *Id*.

In *Sateriale v. R.J. Reynolds Tobacco Co*., consumers challenged a tobacco company's announcement to end a customer-rewards program as unfair and deceptive in violation of both the CLRA and UCL. 697 F.3d 777, 793-794 (9th Cir. 2012). But, because the consumers failed to allege they purchased additional cigarettes or otherwise detrimentally relied on the announcement, the Ninth Circuit found they failed to plead actual reliance and upheld dismissal of both claims. *Id*.

NOTICE OF MOTION AND MOTION TO DISMISS

As in *Sateriale*, the Complaint is devoid of any factual allegations that Plaintiff detrimentally relied on anything that Sunnova said or did. Plaintiff does not allege that he saw any marketing or advertising by Sunnova, relied on any statement by Sunnova, saw the contract with Sunnova or any of its terms or had any interaction with Sunnova whatsoever prior to his agreement to have the Solar System installed on his roof. (*See* Compl. ¶¶ 49-60.) Plaintiff's failure to allege that Sunnova made *any* representation (or omission) that induced him to agree to the installation of the Solar System that allegedly caused him damage requires dismissal of the claim. *See Sateriale,* 197 F.3d at 793.

Further, insofar as Plaintiff alleges he suffered damage based on an "unconscionable provision in a contract," he fails to allege what the provision was or how it caused him damage. (Compl. ¶ 94(k).) Nor can he, given that he alleges he never saw the Agreement or knew of any of its terms before agreeing to the installation of the Solar System. (*Id*. ¶¶ 49-60); *see Meyer v. Sprint Spectrum, L.P.,* 45 Cal. 4th 634, 643 (2009) (dismissing CLRA claim where plaintiffs failed to allege detrimental reliance on purportedly unconscionable terms in a contract).

Nor does Plaintiff allege a violation of the CLRA or UCL under an agency theory. Under both statutes, liability cannot be predicated on vicarious liability absent evidence of "personal participation" in the unlawful practices and "unbridled control" over those deceptive practices. *Prudencio v. Midway Importing, Inc*., 831 F. App'x 808, 811 (9th Cir. 2020) (affirming dismissal of CLRA claim where plaintiff failed to plausibly allege subsidiary was responsible for labeling of parent's products); *In re Jamster Marketing Litig*., No. 05cv0819 JM(CAB), 2009 WL 1456632, at *9 (S.D. Cal. May 22, 2009) ("Absent allegations of participation or control in the alleged unlawful advertising scheme by [defendants], these Defendants cannot be held vicariously liable for the acts of third parties . . . Plaintiffs fail to identify any authority permitting a CLRA claim to be maintained under a secondary liability theory."); *see also Brazil v. Dole Packaged Foods, LLC*,

660 F. App'x 531, 534 (9th Cir. 2016) (affirming dismissal of UCL claim where plaintiff "did not see the allegedly offending statements" before purchasing product and thus could not have relied on them).

Even setting aside Plaintiff's failure to allege reliance, Plaintiff's UCL claims based on the unlawful prong fail because he does not sufficiently allege an underlying violation of law. While "[a] violation of almost any law may serve as a basis for a UCL claim" under the unlawful prong, "a UCL claim must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." *In re Anthem, Inc. Data Breach Litigation*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (internal citations and quotations omitted); *Smith v. State Farm Mutual Automobile Ins. Co.,* 93 Cal. App. 4th 700, 718 (2001) (where a plaintiff cannot state a claim under the "borrowed" law, he cannot state a UCL claim either). Moreover, "a plaintiff may not bring an action under the unfair competition law if some other statutory provision bars such an action or permits the underlying conduct." *Rothschild v. Tyco Internat. (US), Inc*., 83 Cal. App. 4th 488, 494 (2000).

Plaintiff's UCL claim under the "unlawful" prong is predicated on Sunnova's alleged violations of: (1) the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B); (2) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f), and the Red Flags Rule, 16 C.F.R. § 681.1(d)(1); and (3) the Holder Rule, 16 C.F.R. § 433. But Plaintiff fails to sufficiently allege Sunnova violated any of these statutes.

The CFPA "makes it unlawful for a covered person 'to engage in any unfair, deceptive, or abusive act or practice.'" *C.F.P.B. v. CashCall, Inc.*, 35 F.4th 734, 746 (9th Cir. 2022) (quoting 12 U.S.C. § 5536(a)(1)(B)). Plaintiff's allegation that Sunnova violated the CFPA fails for the same reason that his fraudulent concealment and negligence claims fail: he fails to allege with reasonable

NOTICE OF MOTION AND MOTION TO DISMISS

particularity that Sunnova committed any unfair, deceptive, or abusive acts, relying instead on an unsupported theory of agency. (*See* Sections IV.A.2. and IV.B., *infra*.)

Moreover, to establish a claim under the FCRA, 15 U.S.C. § 1681b(f), a plaintiff must establish: "(i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." *McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp. 2d 855, 867 (E.D. Mich. 2006) (citations omitted). "A showing of a permissible purpose is a complete defense." *Rydell v. Servco Auto Windward*, No. 11–00485, 2011 WL 5506088, at *2 (D. Haw. Nov. 9, 2011) (internal citations and quotations omitted).

In *Glanton v. DirecTV, LLC*, the plaintiff, like Plaintiff here, alleged he was a victim of identity theft and that defendant company made an "unauthorized inquiry" into his credit profile in violation of the FCRA. 172 F. Supp. 3d 890, 895 (D.S.C. 2016). In dismissing the claim, the district court noted that, "[b]y its plain language, Section 1681b does not require that a user of credit reports . . . have a consumer's 'permission' to access his credit report. It is also insufficient for the plaintiff to allege that he 'never sought to acquire services from' the defendant." *Id*. As the court explained, "so long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA." *Id*. at 896 (quoting *Korotki v. Attorney Serv. Corp.*, 931 F. Supp. 1269, 1276 (D. Md. 1996)); *Shah v. Collecto, Inc*., No. CIV 2004–4059, 2005 WL 2216242, at *12 (D. Md. Sept. 12, 2005) ("[I]f a user had a reason to believe that a consumer owed a debt, it would have a permissible purpose to access the consumer's credit report.").

Here, there are no allegations that Sunnova did not have a reasonable belief at the time that it allegedly used Plaintiff's consumer report that Plaintiff had not legitimately executed the Agreement and applied for a Solar System. Thus, Plaintiff fails to allege a violation of FCRA, 15 U.S.C. § 1681b(f). *See Glanton,* 172 F. Supp. 3d at 895.

Further, Plaintiff's allegation that Sunnova has not developed an Identity Theft Prevention Program is insufficient because the predicate statue contains a provision that explicitly bars private rights of action. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999) (the UCL cannot be used to "plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition."); *Stevens v. Sup. Ct.*, 75 Cal. App. 4th 594, 606 (1999) (The UCL "allows nearly any law or regulation to serve as its basis unless the predicate statute explicitly bars a private right of action.") Plaintiff relies on the FRCA's Red Flags Rule, 16 C.F.R. § 681.1(d)(1), which implements the FCRA, 15 U.S.C. § 1681m(e). (Compl. ¶ 32.) But the FCRA completely bars private rights of action and provides exclusive enforcement authority to federal agencies identified in the statute. *See* 15 U.S.C. § 1681m(h)(8); *White v. E-Loan, Inc.*, 409 F. Supp. 2d 1183, 1184-87 (N.D. Cal. 2006) (Section 1681m(h)(8)'s bar applies to the entirety of section 1681m). Because the predicate statute explicitly bars a private right of action, Plaintiff's UCL claim under the FRCA's Red Flags Rule fails.

Plaintiff's UCL claim under the Holder Rule also fails because "[a]ny rights of the consumer under the terms of the required provision itself come into existence only when the provision is in fact included in the consumer credit contract," which is not the case here. *See Vietnam Veterans of America*, 644 F. Supp. at 964.

### D.    The Elder Abuse Act Claim Fails (Fourth Cause of Action)

Financial abuse of an elder is defined under the Elder Abuse Act as when one "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Welf. & Instit. Code, § 15610.30(a). A person or entity is liable under the statute if "the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." *Id.*, § 15610.30(b).

In support of this claim, Plaintiff adds no new factual allegations against Sunnova, merely making the redundant, conclusory allegation that Sunnova "took

undue advantage of Plaintiff, by misrepresenting and concealing material facts." (*See* Compl. ¶ 110.) But such conclusory allegations are insufficient to state a claim, given that Plaintiff knowingly entered into an agreement for the Solar System, that Sunnova was at all times forthcoming with Plaintiff about the fact of the Agreement and its terms and that Plaintiff had no interaction with Sunnova until months *after* he agreed to the installation, making detrimental reliance on anything Sunnova said or did impossible. (*See* Section IV.A.1., *infra*.)

Nor does Plaintiff allege that Sunnova "knew or should have known" that Greenspire or its salesmen "misrepresented or concealed" anything either. Plaintiff admits he agreed to have the Solar System installed solely based on statements made by Greenspire salesmen. (Compl. ¶¶ 56, 59.) Once the Solar System was installed and operational (with Plaintiff's approval), Sunnova attempted to collect what it was owed under the Agreement, which was executed with Plaintiff's electronic signature. (*Id*. ¶¶ 57-59.) Nothing in the Complaint suggests Sunnova had any reason to suspect that Greenspire salesmen had lied to Plaintiff about the Solar System or forged his name to the Agreement. Sunnova's collection of payment owed under the Agreement does not constitute an Elder Abuse Act claim absent factual allegations that Sunnova acted wrongfully in collecting those funds, which is not alleged here. *See Ira Potovsky, et al. v. Lincoln Benefit Life*, No. 23-cv-02235-WHO, 2023 WL 8461171, at *11 (N.D. Cal. Dec. 6, 2023) (allegations that insurer failed to pay benefits under policy, even if wrong, insufficient to allege Elder Abuse Act violation where plaintiff failed to allege insurer "acted in bad faith or unreasonably"); *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 527 (2011) (upholding dismissal of Elder Abuse Act claim because "plaintiffs failed to allege property was taken *wrongfully*") (emphasis in original); *see id*. (lender does not engage in financial abuse of an elder by merely exercising its rights under a contract); *Moran v. Bromma,* 675 Fed. Appx. 641, 646 (9th Cir. 2017) (Elder Abuse Act claims must be alleged with particularity).

Finally, vague allegations of agency and liability under the Holder Rule fail for the same reason they fail in the fraudulent concealment, negligence, CLRA and UCL claims. Plaintiff's Section 15610.30 claim should be dismissed.

### E.   The Rosenthal Act Claim Is Too Conclusory To Survive a Motion to Dismiss (Fifth Cause of Action)

"Generalized allegations that a party made a 'false, deceptive, or misleading representation' and 'used unfair or unconscionable means to collect or attempt to collect any debt . . . are insufficiently detailed to give [the defendant] fair notice of any wrongful acts [under the Rosenthal Act].' Rather, Plaintiff must plead facts about the instances of conduct that Defendants allegedly engaged in." *Haroutoonian v. NewRez, LLC,* No. SACV 22-00751-CJC (JDEx), 2023 WL 2626970, at *3 (C.D. Cal. Jan. 10, 2023) (quoting *London v. Wells Fargo Bank, N.*A., No. 2:17–cv–00687–KJM–AC, 2018 WL 621262, at *8 (E.D. Cal. Jan. 29, 2018)).

In support of his Rosenthal Act claim, Plaintiff merely recites the statute and alleges Sunnova "attempted to collect a non-existent debt from Plaintiff." (Compl. ¶ 124.) Such conclusory allegations, devoid of any factual allegations of misconduct, are insufficient to state a claim under the statute as a matter of law. *See Pica v. Wachovia Mortg*., No. 2:09–cv–02372–GEB–KJN, 2010 WL 1525069, at *7 (E.D. Cal. Apr. 15, 2010) (finding insufficient plaintiff's allegations that the defendants violated the Rosenthal Act by "threaten[ing] to take actions not permitted by law," such as "collecting on a debt not owed the Defendants, making false reports to credit reporting agencies, falsely stating the amount of a debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means in an attempt to collect a debt"); *Haroutoonian,* 2023 WL 2626970, at *4 (dismissing Rosenthal Act claim where plaintiff failed to allege sufficient facts or details describing alleged illegal conduct).

### F.   Plaintiff's HSSA Claim Fails (Sixth Cause of Action)

The HSSA requires that a contract falling within its scope include certain

language about a buyer's right to cancel and be written in the same language as an oral sales presentation. *See* Cal. Civ. Code §§ 1689.6(a)(1), 1689.7(a)(1)(c). The statute provides buyers the right to cancel such contracts "until midnight of the fifth business day if the buyer is a senior citizen, after the buyer receives a signed and dated copy" of a contract in compliance with the statute. *See id*. §§ 7151, 7151.2, 1689.6. The statute provides that "[c]ancellation occurs when the buyer gives written notice of cancellation to the seller at the address specified in the agreement or offer. *Id*. § 1689.6(d). "[T]he purpose of the legislation was to 'protect consumers against the types of pressures that typically can arise when a salesman appears at a buyer's home.'" *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080, 1086 (N.D. Cal. 2021) (internal citations omitted).

Here, Plaintiff alleges Sunnova violated the HSSA by failing to provide a fully executed copy of the Agreement in Spanish; failing to provide Plaintiff with his five-day right to cancel; and refusing to respond to Plaintiff's request to cancel the Agreement. (Compl. ¶¶ 144-146.) Plaintiff alleges he received the Agreement sometime in June 2023 and that, at some unspecified time thereafter, he attempted to cancel the Agreement. (*Id.* ¶¶ 59, 66.) Plaintiff does not allege how or when he allegedly provided notice of cancellation. *See* Cal. Civ. Code §§ 7151, 7151.2, 1689.6(d). For that reason alone, the HSSA claim fails.

### G.    Plaintiff Fails to State a Claim under Business and Professions Code section 7150, *et seq*. (Seventh Cause of Action)

Plaintiff alleges Sunnova violated Business and Professions Code sections 7159 and 7161 because it is liable for everything that Greenspire salesmen said or did under a theory of agency. (Compl. ¶¶ 151, 162.) Thus, this claim fails for the same reason Plaintiff's other claims fail: it fails to sufficiently allege the Greenspire salesmen were agents of Sunnova. (*See* Section IV.A.2., *infra*.) Indeed, all of Plaintiff's allegations with respect to the purported violations of Bus. & Prof. Code section 7159 concern Greenspire's purported actions. Plaintiff alleges that "[t]he

1   contractor did not give the buyer a copy of the contract signed and dated by both the

2   buyer and the contract," that "[t]he buyer did not receive a copy of the contract that

3   initiates the buyer's rights to cancel" and that "[t]he contract was not signed by the

4   parties to the contract prior to the commencement of the work covered by the

5   contract or any applicable change order." (Compl. ¶ 157 (quoting Bus. & Prof. Code

6   § 7159).) But the Complaint makes clear that the purported forgery and failure to

7   provide the Agreement before the installation were acts of Greenspire, not Sunnova.

8           Plaintiff also makes the conclusory allegations that Sunnova violated Bus. &

9   Prof. Code § 7161 by (1) "Using false, misleading, or deceptive advertising as an

10  inducement to enter into a contract for a work of improvement"; (2) "Making any

11  substantial misrepresentation in the procurement of a contract for a home

12  improvement . . . or making any false promise of a character likely to influence,

13  persuade, or induce any person to enter into the contract"; and (3) "Any fraud in the

14  execution of, or in the material alteration of , any contract . . . incident to a home

15  improvement transaction." (Compl. ¶ 158.) But there are no facts alleged that

16  Sunnova used any advertising, made any misrepresentation to procure a contract or

17  committed any fraud or execution in the material alteration of a contract. Plaintiff

18  does not even allege that Sunnova can be held liable for Greenspire's actions under

19  either an agency theory or the Holder Rule. (*See* Section IV.A.2., IVA.3., *infra*).

20          Finally, Plaintiff alleges that Sunnova's "alleged contract contains a host of

21  other business and Professions Code 7161 violations not alleged herein which stem

22  from the fact that Plaintiff did not sign or receive the alleged contract at the time

23  SUNNOVA claims he became obligated to it." (Compl. ¶ 159.) Such vague,

24  conclusory allegations fail to give Sunnova fair notice of the claim and are

25  insufficient as a matter of law. *See Iqbal*, 556 U.S. at 678-681.

26  **V.    CONCLUSION**

27          Based on the foregoing, Sunnova respectfully requests that the Court dismiss

28  the Complaint in its entirety.

1    DATED:  January 8, 2024            WAYMAKER LLP

2

3

4                                      By:  /s/ *Teresa L Huggins*
                                            Ryan G. Baker
5                                           Teresa L. Huggins
                                            Kevin M. Casey
6                                           *Attorneys for Defendant for*
                                            *Sunnova Energy Corporation*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS