KEMNITZER, BARRON & KRIEG, LLP
KRISTIN KEMNITZER          Bar No. 278946
ADAM J. MCNEILE            Bar No. 280296
MALACHI J. HASWELL         Bar No. 307729
1120 Mar West St., Ste C2
Tiburon, CA 94920
Telephone: (415) 632-1900
Facsimile: (415) 632-1901
adam@kbklegal.com
kristin@kbklegal.com
kai@kbklegal.com

Attorneys for Plaintiff BENJAMIN MARTINEZ

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN MARTINEZ,<br><br>                Plaintiff,<br><br>   vs.<br><br>SUNNOVA ENERGY CORPORATION; and DOES 1 through 20, inclusive,<br><br>                Defendants. | **Case No. 5:23-cv-02233-MWF-BFM**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**I.  FRAUDULENT CONCEALMENT;**<br>**II. NEGLIGENCE;**<br>**III. THE CONSUMERS LEGAL REMEDIES ACT (CIVIL CODE §1750, *ET SEQ.*);**<br>**IV. VIOLATIONS OF THE ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT (WELFARE & INSTITUTIONS CODE §15610.07, *ET SEQ.*);**<br>**V. VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CIVIL CODE §1788, *ET SEQ.*);**<br>**VI. VIOLATIONS OF THE HOME SOLICITATION SALES ACT (CIVIL CODE §1689.5, *ET SEQ.*);**<br>**VII. VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §7150, *ET SEQ.*; and**<br>**VIII. VIOLATIONS OF THE UNFAIR COMPETITION LAW (BUSINESS & PROFESSIONS CODE §17200, *ET SEQ.*)**<br><br>Unlimited Civil Case<br><br><u>JURY TRIAL DEMANDED</u> |

# **INTRODUCTION**

1.      This case involves a scheme in which Defendant SUNNOVA ENERGY CORPORATION ("SUNNOVA") partners with unscrupulous door-to-door salesmen and contractors like Greenspire LLC to target vulnerable consumers for the fraudulent sale and onerous "financing" of solar panels. Plaintiff BENJAMIN MARTINEZ ("Plaintiff") is an elderly monolingual Spanish speaker who fell victim to SUNNOVA and its agents' and representatives' fraudulent scheme.

2.      Plaintiff is a 78-year-old monolingual Spanish speaker. He has the equivalent of a second-grade education. At the time door-to-door salesmen, acting as agents for and on behalf of SUNNOVA, showed up at Plaintiff's home unannounced, his wife was in the ICU being treated for a serious disease. Plaintiff cannot independently use a computer and does not know how to access email without assistance. He does not know how to sign documents electronically.

3.      SUNNOVA's authorized door-to-door salespeople exploited Plaintiff's vulnerabilities. They lied to Plaintiff and told him that his energy bills would drop to $105 per month if he allowed them to install their solar panels and battery, which they insisted would be done free of charge. They then took his personal information from an energy bill he provided to them, and, unbeknownst to Plaintiff, created an email address to which Plaintiff had no access, forged his signature on a SUNNOVA contract, and obligated him to a 25-year loan totaling $48,272.37 for solar panels and a back-up battery (the "Solar Panel System").

4.      Following the install of the Solar Panel System that SUNNOVA agents had represented was free and was necessary to lower Plaintiff's monthly energy bill, Plaintiff began receiving debt collection calls. Plaintiff at first believed these calls were from his utility company, but he later discovered it was SUNNOVA making the calls. Plaintiff had never heard of SUNNOVA before these calls because he had never received or signed a contract with any party.

5.      To this day, despite lawfully cancelling any and all alleged contract(s),

1  SUNNOVA continues to demand monthly payments from Plaintiff on contracts to
2  which he never agreed.

3  6.      Plaintiff brings this action for Fraudulent Concealment, Negligence, and
4  violation of the Consumers Legal Remedies Act ("CLRA"), Civ. Code §1750, *et*
5  *seq.*; the Elder Abuse and Dependent Adult Civil Protection Act ("EADACPA"),
6  Welf. & Inst. Code §15610.07, *et seq* ; the Rosenthal Fair Debt Collection
7  Practices Act (the "Rosenthal Act"), Civ. Code §1788, *et seq.*; the Home
8  Solicitation Sales Act ("HSSA"), Civ. Code §1689.5, *et seq.*; Bus & Prof. Code
9  §7150, *et seq.*; the Unfair Competition Law ("UCL"), Bus & Prof. Code §17200, *et*
10 *seq.* and to obtain actual, statutory, civil, treble, and punitive damages for the harm
11 that he has suffered. Plaintiff also seeks a public injunction against SUNNOVA, to
12 enjoin its unlawful, unfair, and fraudulent conduct.

13                                    **PARTIES**

14 7.      Plaintiff is an individual over the age of 18 years. At all times relevant
15 herein, Plaintiff was, and currently is, a resident of the State of California, County
16 of Riverside.

17 8.      Defendant SUNNOVA is, and at all times relevant herein was, a Delaware
18 corporation with its principal place of business in Texas, that at all times relevant
19 herein was licensed to do business and was conducting business in California.

20                                **DOE DEFENDANTS**

21 9.      Plaintiff does not know the true names and capacities, whether corporate,
22 partnership, associate, individual or otherwise, of Defendants sued herein as DOES
23 1 through 20, inclusive, pursuant to §474 of the California Code of Civil
24 Procedure. Nonetheless, Plaintiff alleges that Defendants DOES 1 through 20,
25 inclusive, are in some manner responsible for the acts, occurrences and
26 transactions set forth herein and are legally liable to Plaintiff. Plaintiff will seek
27 leave to amend this complaint to set forth the true names and capacities of the DOE
28 Defendants, together with appropriate charging allegations, if and when

1  ascertained.

2  ## THE HOLDER RULE

3  10.    All claims and defenses that Plaintiff has against Greenspire arising out of

4  the solar panel purchase transaction are also valid against SUNNOVA, because

5  SUNNOVA is the holder of any alleged consumer credit contract. Given the

6  violations of law alleged below, and the Federal Trade Commission Holder in Due

7  Course rule, 16 C.F.R. §433, *et seq*., which subjects the holder of a consumer

8  credit contract to all claims and defenses of the consumer against the seller,

9  SUNNOVA is subject to all claims and defenses Plaintiff may have against

10  Greenspire. Specifically, SUNNOVA's contract is required to include the

11  following language:

12      NOTICE

13      ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
        SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE
14      DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS
        OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE
15      PROCEEDS THEREOF. RECOVERY HEREUNDER BY THE
        DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE
16      DEBTOR HEREUNDER.

17  11.    Nevertheless, despite being subject to Holder in Due Course rule,

18  SUNNOVA fails to include the requisite language in its contract. By failing to

19  include the requisite language in its form contract, SUNNOVA systematically

20  misleads customers as to the status and the obligations of their legal rights under

21  the contract.

22  12.    As such, SUNNOVA's failure to include holder language is, in and of itself,

23  a violation of the FTC's Holder in Due Course rule and the UCL, Bus & Prof.

24  Code §17200, *et seq.* Because SUNNOVA's violation of the law is for its own

25  conduct and is not derivative of any conduct by Greenspire or its agents, the FTC

26  Holder Rule's cap on damages does not apply.

27  ## AGENCY

28  13.    Plaintiff is informed, believes, and thereon alleges that at all times

mentioned herein, each Defendant, whether actually or fictitiously named, was the principal, agent (actual or ostensible), or employee of each other Defendant. In acting as such principal or within the course and scope of such employment or agency, each Defendant took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein.

14.    Furthermore, Plaintiff is informed, believes, and thereon alleges that at all times mentioned herein Greenspire employees and/or representatives act as agents and at the direction of SUNNOVA as part of the SUNNOVA Program described below. SUNNOVA retained the right to control the conduct of Greenspire, including by (1) requiring Greenspire sales agents to use specific software, applications, and technology when engaging in transactions with consumers on SUNNOVA's behalf; (2) controlling the SUNNOVA products Greenspire sales agents could offer, the terms and conditions of the products offered, the method of presentation of the products offered, and the contractual documents that could be utilized; (3) controlling the marketing and sales tactics of Greenspire and its sales agents; (4) retaining the right to discipline Greenspire and sales agents for violations of policies and procedures set by SUNNOVA; (5) requiring all sales agents who offer contracts using SUNNOVA forms, including those sales agents of Greenspire, to be registered with the Contractors State License Board as being employed by SUNNOVA; and (6) retaining the right to terminate Greenspire and/or Greenspire sales agents from the Sunnova Program. At all times, SUNNOVA has ratified the conduct of Greenspire and its sales agents, including in the instant case.

## JURISDICTION AND VENUE

15.    This Court has federal diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a) in that the matter in controversy exceeds $75,000 and is between citizens of different states.

16.    The Court has personal jurisdiction over Defendant because it purposefully availed itself of the privilege of conducting activities in California and directed its activities into this forum; Plaintiff's claims arise out of Defendant's forum-related activities; and the exercise of jurisdiction comports with fair play and substantial justice.

17.    Venue is proper in the Central District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. § 1391(b)(2).

## **FACTUAL ALLEGATIONS**

## **The Consumer Solar Panel Industry**

18.    The solar industry is one of the fastest growing global industries, with a global valuation of $154.47 billion in 2020, and estimated to balloon to over $1 trillion by 2028.[1] Though green energy in theory is a noble goal, the exponential growth in the industry has led to an exponential growth of fraud, with little to no oversight.

19.    SUNNOVA's business model ratifies the fraud perpetrated by its agents such as Greenspire. As SUNNOVA is well aware, the solar panel door-to-door sales and installation business is heavily populated with deceptive and dishonest contractors targeting, preying upon, and ripping off vulnerable consumers.[2]

---

[1] *See Solar Photovoltaic Market Size [2021-2028] USD 1,00.92 Billion*, Apr. 25, 2022, https://finance.yahoo.com/news/solar-photovoltaic-market-size-2021-120400068.html (last visited on October 19, 2022).

[2] *See, e.g.*, *U.S. v. Vivint Smart Home, Inc.*, Case No. 2:21-cv-00267-TS (D. UT 2021) (stipulated order for permanent injunction and civil penalty judgment for Vivint's violation of the FTC's "Red Flags Rule" involving identity theft); *New Mexico v. Vivint Solar, Inc.*, Case No. D-202-CV-201801936 (lawsuit by New Mexico Attorney General alleging solar panel installation contractor engaged in unfair and deceptive practices including fraudulently inducing consumers to enter into twenty-year power purchase agreements which would purportedly save them significant amounts of money); *State of Minnesota, by its Attorney General Keith Ellison v. Brio Energy LLC et al.*, Hennepin County, Case No. 27-CV-22-6187 (lawsuit by Minnesota Attorney General against four Utah-based solar panel companies alleging they lied about their relationship with Minnesota utilities, misrepresented financial benefits of purchasing solar panels, and tricked consumers into signing binding sales contracts and loan agreements); Alana Samuels, *Rooftop Solar Power Has a Dark Side*, TIME, September 26, 2023, available at https://time.com/6317339/rooftop-solar-power-failure/ (last visited October 2, 2023); Bailey Schulz, *New Jersey Solar Company Allegedly Pressured Vulnerable Populations Into Contracts for a 'Shoddy Product'*, USA TODAY, April 12, 2023, available at https://www.usatoday.com/story/money/2023/04/10/vision-solar-panel-lawsuit/11600307002/ (last visited on September 22, 2023) (detailing class action suit filed in New Jersey on behalf

# **SUNNOVA's Scheme**

## A. SUNNOVA's Partner Program

20.     The deceptive sales tactics of solar panel installation contractors like Greenspire are enabled, facilitated, and ratified by the large financing companies like SUNNOVA that fund the projects and orchestrate and oversee the entire process, from door-to-door sale to installation. The industry is rife with scams due to sale and financing companies like SUNNOVA deputizing door-to-door salespersons with broad authority to use SUNNOVA forms and sales tools to sign up vulnerable consumers for tremendously expensive, multi-decade contracts and loans.[3]

---

of plaintiffs from five States alleging that solar panel leasing company Vision Solar salespeople used high-pressure sales tactics to convince homeowners - including low-income, disabled and elderly individuals - to purchase or lease solar panel systems); Press Release, Office of the Attorney General of the State of Kentucky, *Attorney General Cameron Leads Nine States in Urging Five Solar Lender Companies to Suspend Financial Obligations For Pink Energy Consumers*, November 22, 2022, available at https://www.kentucky.gov/Pages/Activity-stream.aspx?n=AttorneyGeneral&prId=1287 (last visited October 1, 2023); Press Release, Office of the Attorney General State of Idaho, *Attorney General Issues Tips for Homeowners on Solar Installations*, February 21, 2022, available at https://www.ag.idaho.gov/newsroom/attorney-general-issues-tips-for-homeowners-on-solar-installations/ (last visited September 22, 2023) (reporting the Idaho AG issued a consumer alert regarding solar companies' use of misleading sales tactics through door-to-door sales and social media advertisements); Lauren Trager, *Missouri Attorney General Sues Solar Panel Company After Customer Complaints, News 4 Investigation*, KMOV, September 30, 2022, available at https://www.kmov.com/2022/10/01/missouri-attorney-general-sues-solar-power-after-customer-complaints-news-4-investigation/ (last visited September 22, 2023) (reporting that former Missouri Attorney General and now US Senator Eric Schmitt sues Pink Energy for making false promises and misrepresentations to consumers, deception, and concealing material facts); Press Release, Office of the Attorney General of Connecticut, *Attorney General Tong Sues Vision Solar Over Unfair and Deceptive Sales, Violations of Home Improvement Act* (March 16, 2023), available at https://portal.ct.gov/AG/Press-Releases/2023-Press-Releases/Attorney-General-Tong-Sues-Vision-Solar-Over-Unfair-and-Deceptive-Sales (last visited September 22, 2023) (disclosing that the Attorney General of Connecticut sued Vision Solar for preying on low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that in some cases were never activated); David Lazarus, *Column: This Solar Company Wouldn't Let a Dead Woman out of Her Contract*, LA TIMES, June 1, 2021, available at https://www.latimes.com/business/story/2021-06-01/column-solar-power-dead-customer (reporting that Vivint (subsequently Sunrun) signed up a 91-year-old woman for solar panels weeks before her death and then steadfastly refused the family's pleas to cancel the contract after her death).

[3] *See, Vivint Solar Buyers Ink Deal in Predatory Sales Suit*, LAW360, Sept. 12, 2022, https://www.law360.com/articles/1529150/vivint-solar-buyers-ink-deal-in-predatory-sales-suit (last visited on October 19, 2022); Press Release, Better Business Bureau, *BBB Scam Alert: "Free solar panels" can cost you big time! How to spot a phony offer and find a trustworthy business* (September 22, 2023), available at https://www.bbb.org/article/scams/27595-bbb-scam-alert-free-solar-panels-can-cost-you-big-time-how-to-spot-a-phony-offer (last visited on September 28, 2023); Better Business Bureau Business Profile of Sunnova Energy Corporation, Current Alert of deceptive sales practices, available at https://www.bbb.org/us/tx/houston/profile/solar-energy-design/sunnova-energy-corporation-0915-90035524 (last visited September 28, 2023); Press Release, California Contractors State Licensing Board, *CSLB Warns Consumers to be Cautious of Misleading and Illegal Solar Advertisements* (April 17, 2023), available at https://www.cslb.ca.gov/Resources/PressReleases/2023/Illegal_Advertisements.pdf (last visited September 28,

21.     SUNNOVA provides a wide range of services including direct solar panel, battery, electric vehicle charging, and generator sales, and is also a lender and/or loan broker which has developed and administers a paperless lending platform that relies on sales by third-party agents it oversees. The focus of SUNNOVA'S business is selling solar panels and other energy products through itself or its agents and arranging or providing loans to finance the purchase and installation of those products on the homes of individual consumers.

22.     To expand its business, SUNNOVA designed, implemented and oversees a program that entices solar installation contractors to partner with SUNNOVA by promising that by doing so they "win more work, close more deals, and get paid faster."[4] SUNNOVA partners and the sales agents of these partners are deputized to simultaneously sell customers solar panels and arrange financing for the purchase of the solar panels through SUNNOVA loans. The availability of SUNNOVA financing allows the partner contractors to close more transactions with near immediate approval by SUNNOVA.

---

2023); Better Business Bureau Business Profile of Solar Mosaic LLC, Current Alert of forced payments for solar services not received, available at https://www.bbb.org/us/ca/oakland/profile/financial-services/solar-mosaic-llc-1116-444414/complaints (last visited September 28, 2023); Randy Travis, *Georgia PSC 'getting lit up' with complaints about home solar ripoffs*, FOX5 ATLANTA, May 26, 2022, available at https://www.fox5atlanta.com/news/psc-getting-lit-up-with-complaints-about-home-solar-ripoffs (last visited September 28, 2023); Dale Yurong, *198 Fresno County residents cheated in solar power scam*, ABC30 FRESNO, September 19, 2019, available at https://abc30.com/fresno-county-fersno-scam-solar-fraud/5554203/ (last visited September 28, 2023); *Vivint Solar Investors Sue Brass Over Predatory Sales Worries*, LAW360, Mar. 10, 2020, https://www.law360.com/articles/1252108/vivint-solar-investors-sue-brass-over-predatory-sales-worries (last visited on October 19, 2022); Kurtis Ming, *California Establishes Fund for Victims of Solar Fraud*, CBS SACRAMENTO, Jul. 25, 2022, available at https://www.cbsnews.com/sacramento/news/california-establishes-fund-for-victims-of-solar-fraud/ (last visited on October 19, 2022); *CFPB Takes Action Against Fintech Company GreenSky for Enabling Merchants to Secure Loans For Consumers Without Their Authorization*, CONSUMER FINANCIAL PROTECTION BUREAU, Jul. 12, 2021, https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-against-fintech-company-greensky-for-enabling-merchants-to-secure-loans-for-consumers-without-their-authorization/#:~:text=The%20CFPB%20issued%20a%20consent,to%20prevent%20future%20fraudulent%20loans (last visited October 19, 2022); Jeff Goldman, NJ.COM, Oct. 24, 2019, *Vivint Solar Agrees to Pay $122k Fine Over Charges of Deceptive Door-to-Door Sales Practices*, https://www.nj.com/news/2019/10/vivint-solar-agrees-to-pay-122k-fine-over-charges-of-deceptive-door-to-door-sales-practices.html (last visited October 19, 2022); *Vivint, Inc. to pay $375,000 to Resolve Allegations of Deceptive Advertising and Sales Practices*, Feb. 12, 2015, GEORGIA OFFICE OF THE ATTORNEY GENERAL CONSUMER PROTECTION DIVISION, https://consumer.georgia.gov/press-releases/2015-02-12/vivint-inc-pay-375000-resolve-allegations-deceptive-advertising-and-sales (last visited on October 19, 2022).

[4] https://www.sunnova.com/dealers, last visited October 2, 2023.

FIRST AMENDED COMPLAINT

23.     SUNNOVA vests its own sales agents and the sales agents of its partners like Greenspire with the authority to obtain nonpublic Personally Identifiable Information ("PII") from consumers and to submit loan applications on their behalf. The partners and their sales agents are SUNNOVA'S agents in originating loans.

24.     Upon information and belief, SUNNOVA offers its partners immediate, on-the-spot approval of the loan applications that the partners submit on behalf of consumers to SUNNOVA through an electronic, paperless process created and managed by SUNNOVA.

25.     Upon information and belief, SUNNOVA retains a portion of every loan generated by the sales agents of its partners to cover its fees and charges as well as to build significant profit into every transaction. Thus, both SUNNOVA and the partner contractors financially benefit from every loan generated by SUNNOVA's and its partners' sales agents in the SUNNOVA Program. SUNNOVA is thereby incentivized to keep partners happy, as they are agents and joint venturers in the SUNNOVA program and the source of SUNNOVA'S fees and loan originations. Without salespeople, SUNNOVA could not facilitate loans on the same scale it does. Plaintiff will refer to this scheme as the "SUNNOVA Program."

26.     The SUNNOVA Program enables and facilitates the exploitation of vulnerable consumers by unscrupulous solar installation contractors who become partners in the SUNNOVA Program. Upon information and belief, while SUNNOVA created and manages the SUNNOVA program, and SUNNOVA has ostensible control over all aspects of the SUNNOVA program from as set forth in paragraph 15 and otherwise as set forth herein, there are little to no effective safeguards in the SUNNOVA Program to protect consumers. As a result, Sunnova's partners, who Sunnova vests with the broad authority to do so, place consumers into loans they had no opportunity to review and therefore cannot understand.

27.    SUNNOVA's business model allows its "Partners" to get paid by SUNNOVA in return for saddling consumers with tens of thousands of dollars in debt, incentivizing entering unwitting consumers into the loans by any means necessary. The SUNNOVA program's paperless system, focus on speed, and financial incentives allow partners such as Greenspire to close sales transactions, lock customers into financing, and receive immediate payment through the SUNNOVA Program with no regard to their ability to actually perform the work contracted, and regardless of whether the alleged contracts are forged.

28.    Upon information and belief, SUNNOVA deputizes the salespersons of its partners with broad authority to initiate loan applications and finalize loans using SUNNOVA forms on SUNNOVA's online, paperless system, and on behalf of SUNNOVA. SUNNOVA retains the right to control its partners' conduct by, among other things, (1) requiring Greenspire sales agents to use specific software, applications, and technology when engaging in transactions with consumers on SUNNOVA's behalf; (2) controlling the SUNNOVA products Greenspire sales agents could offer, the terms and conditions of the products offered, the method of presentation of the products offered, and the contractual documents that could be utilized; (3) controlling the marketing and sales tactics of Greenspire and its sales agents; (4) retaining the right to discipline Greenspire and sales agents for violations of policies and procedures set by SUNNOVA; (5) requiring all sales agents who offer contracts using SUNNOVA forms, including those sales agents of Greenspire, to be registered with the Contractors State License Board as being employed by SUNNOVA; and (6) retaining the right to terminate Greenspire and/or Greenspire sales agents from the Sunnova Program.

29.    SUNNOVA also ratifies its "Partners" conduct by holding consumers such as Plaintiff liable on loans that they never saw or signed and by refusing to investigate reports of forgery, fraud, and identity theft. Instead of assuring that loan agreements generated in SUNNOVA's name are valid, SUNNOVA simply pockets

1   a portion of every loan generated by its "Partners" and sweeps customer

2   complaints under the rug.

3   30.    Greenspire participates in the SUNNOVA Program and is one of

4   SUNNOVA's partners. It utilizes a fraudulent scheme to saddle consumers with

5   solar panel installation contracts and loans to finance the purchase of the solar

6   panels that the consumer never entered into.

7   **B. <u>SUNNOVA Violates Federal Law Regulating Credit Reporting</u>**

8   31.    The federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681, *et seq.*,

9   was enacted to "ensure fair and accurate credit reporting, promote efficiency in the

10  banking system, and protect consumer privacy." *Dutta v. State Farm Mut. Auto.*

11  *Ins. Co.* (9th Cir. 2018) 895 F.3d 1166, 1169 (quoting *Safeco Ins. Co. of Am. v.*

12  *Burr* (2007) 551 U.S. 47, 52).

13  32.    SUNNOVA violates the FCRA by obtaining consumer reports for reasons

14  other than the statutorily permissible purposes. 15 U.S.C. 1681b(f). SUNNOVA's

15  violation of the FCRA may serve as a predicate unlawful act for the purposes of

16  Plaintiff's UCL cause of action.

17  33.    The FCRA prohibits persons from obtaining consumer reports for any

18  reason other than a permissible purpose. 15 U.S.C. §1681b(f) ("A person shall not

19  use or obtain a consumer report for any purpose unless . . . the consumer report is

20  obtained for a purpose for which the consumer report is authorized to be furnished

21  under this section."). Additionally, the entity using the credit report must certify

22  truthfully that it is obtaining the consumer report for a permissible purpose. 15

23  U.S.C. §1681b(f)(2).

24  34.    SUNNOVA violates the permissible use prohibitions in the FCRA by

25  obtaining and using consumer reports when SUNNOVA's sales representatives

26  seek and obtain the consumer reports underlying SUNNOVA's extension of

27  financing for the purchase of solar panels, but when the borrowers do not consent

28  to be borrowers on SUNNOVA loan agreements. Circumventing credit score

1  limitations by pulling the credit report of a consumer, and then signing that person

2  up as a borrower on expensive, multi-decade loans without their knowledge or

3  consent, is not a permissible purpose under the FCRA.

4  **SUNNOVA and its Salespeople Entrapped Plaintiff in Fraudulent Contracts**

5  35.    Plaintiff is a 78-year-old monolingual Spanish speaker. He proudly owns the

6  home where he lives with his wife. Plaintiff has the equivalent of a second-grade

7  education and conducts all business and personal matters in Spanish. He had a

8  long-standing job at Fender Musical Instruments, where he worked until a sudden

9  and unplanned retirement in June 2022 so that he could care for his hospitalized

10  wife.

11  36.    Plaintiff is technologically illiterate. Plaintiff cannot independently use a

12  computer and does not know how to access email without assistance. He does not

13  know how to sign documents electronically. He does not own a smartphone or

14  computer. He does not have access to the Internet in his home.

15  37.    In June 2022, a man named Jonathan Correa and another man whose name is

16  unknown came to Plaintiff's door unannounced. The door-to-door salespersons

17  were acting as agents of SUNNOVA who, unbeknownst to Plaintiff, (1) were

18  operating through its contractor/installer partner Greenspire and (2) who were

19  required by law to be registered with the Contractors State License Board

20  ("CSLB") to SUNNOVA. The salesmen did not tell Plaintiff that they were with

21  either Greenspire or SUNNOVA; however, SUNNOVA had vested Greenspire and

22  these salesmen with authority to operate on behalf of SUNNOVA in all respects

23  regarding this transaction. SUNNOVA since ratified all actions of these salesmen

24  and Greenspire.

25  38.    In Spanish, the salesmen told Plaintiff that they were offering a program that

26  could save him money each month on his energy bill. The salesmen asked to see

27  Plaintiff's current energy bills. Plaintiff produced two Southern California Edison

28  bills, one for $139 and the other for $148. One of the salesmen copied down some

information from the bills into his notebook, but Plaintiff could not see what information he had copied. Upon information and belief, the information copied was sufficient PII of Plaintiff to permit the salesmen to run Plaintiff's credit on behalf of SUNNOVA. Plaintiff did not authorize the salesmen or SUNNOVA to run Plaintiff's credit at any time.

39.    The salesmen told Plaintiff that they could provide and install solar panels for free, and that thereafter he would only be paying $105 each month for his energy bill. Plaintiff did not know what company the salesmen were representing. The salesmen said they would need to return to see if Plaintiff qualified for the program, a process they described as checking his roof and electrical box for compatibility.

40.    At this time, Plaintiff's wife was in the intensive care unit of the local hospital, where she had been since late May 2022 and would ultimately remain until October of that year, when she would be transferred directly to an in-patient rehabilitation center where she stayed another three months. This was an extremely challenging time for Plaintiff, emotionally and financially. Plaintiff told the salesmen of his wife's hospitalization and that the savings they were promising would be very helpful and he was interested in the solar panel program they offered. Specifically, that he would get solar panels for free and lower his utility bill to around $105 per month.

41.    The salesmen exploited Plaintiff's vulnerabilities. The salesmen did not provide Plaintiff with a paper or electronic contract or agreement. In fact, the salesmen never offered Plaintiff any kind of information or documentation of any type. Plaintiff never touched the electronic devices the salesmen had in their possession and had no smartphone or email of his own and does not even have Internet in his home. The salesmen merely assured Plaintiff that they would return shortly to see if Plaintiff qualified for the program.

42.    Several weeks after the initial visit, Jonathan Correa and the other salesman

appeared, again without notice, at Plaintiff's front door. Plaintiff initially told them he was no longer interested in the solar panels. Nothing had transpired since their first visit and the salesmen had not returned as promptly as promised. But the salesmen were persistent in their pressure, assuring Plaintiff that the solar panels would be provided and installed for free and that he would, in short order, be saving considerable sums each month on his energy bill. Plaintiff allowed the salesmen to scale his roof and check his electrical box, which they informed him were compatible for the solar panel system.

43.    During the second visit, Plaintiff witnessed one of the salesmen using the tablet computer they brought, before switching to his cell phone and working on that. At one point, one of the men fielded a call in English on his phone, which Plaintiff could not understand. At no point did Plaintiff touch or use any of the electronic devices the salesmen brought. The salesmen never presented Plaintiff with any type of physical or electronic documentation, and Plaintiff never signed anything. Plaintiff again expressed interest in the savings the salesmen promised and the solar panel system that they promised would be provided and installed for free. The salesmen told Plaintiff they would return in several weeks for the installation.

44.    Months passed after the second visit by the salesmen. Plaintiff did not know what company they worked for and had not been provided any contact information for them. Without any type of documentation, and without having signed or seen any contract, Plaintiff again figured the salesmen had not followed through on their promises and nothing further would happen. Plaintiff was confused and surprised when installers appeared at his home in October 2022. The men that showed up at his house did not speak Spanish. With no ability to contact the salesmen, and not knowing that the companies SUNNOVA or Greenspire even existed, Plaintiff relied on the promises that the panels were free and he would thereafter only be paying a fixed monthly energy bill of $105, and allowed the installers to proceed.

However, upon information and belief, the solar panel system has never functioned and has not produced any electricity at any time.

45.    Some months after the panels were installed, Plaintiff began receiving harassing phone calls saying he was $918 past due on his energy bill. Plaintiff did not understand who was calling him, and he still had no idea that SUNNOVA or Greenspire existed, as he had never seen let alone signed any kind of document identifying the companies. Because Southern California Edison had always been Plaintiff's energy provider, and because a Southern California Edison bill arrived around the time some of the calls from SUNNOVA were received, he assumed the amount was due to Southern California Edison and he promptly paid Southern California Edison $918.

46.    The harassing debt collection phone calls, however, persisted. Plaintiff then enlisted the assistance of a neighbor, who helped him figure out that it was a company called SUNNOVA who was calling. Plaintiff then promptly paid the $918 to SUNNOVA to avoid the harassing calls and damage to Plaintiff's credit and to prevent any formal debt collection proceedings. Thus, Plaintiff paid *both* Southern California Edison *and* SUNNOVA *each* $918, which was a tremendous sacrifice for him.

47.    Thereafter, Plaintiff's daughter contacted SUNNOVA and helped Plaintiff obtain, for the first time, a copy of the alleged contract. The SUNNOVA contract says it was signed on June 20, 2022, and is a 25-year loan totaling $48,272.37. Plaintiff would be 102 when he theoretically would finish paying it off. Although Plaintiff is a monolingual Spanish speaker, the alleged SUNNOVA contract is in English. Plaintiff could not have read it even if he had seen the contract in June 2022, which he did not.

48.    Plaintiff had only ever communicated with Jonathan Correa and the other salesperson in Spanish. Jonathan Correa is not listed on the contract, but someone named "Madeline Arteaga" is listed as the signatory for Greenspire. A search of

the CSLB website lists Ms. Arteaga as both employed by "Rayker Inc. dba Greenspire Construction" and SUNNOVA. The contract states that it was assigned to SUNNOVA and executed by SUNNOVA authorized signatory John Santo Salvo. The alleged contract states it was signed by "Benjamin Nieto" *and* John Santo Salvo in the same minute – 14:28 Mountain Time. The SUNNOVA contract also indicates that it was signed by "Madeline Arteaga" at 15:30 Pacific Time, which is over two hours after it was allegedly signed by Plaintiff and SUNNOVA.

49.     The monthly payments in the alleged contract with Sunnova are $110.57 for the first eighteen months, and $163.48 for months 19-300, much more than the $105 promised and more than the electric bills Plaintiff presented to the salesmen.

50.     Plaintiff's birth name is Benjamin Martinez Nieto. Martinez is his paternal last name, and as is customary in Mexico it is the penultimate name when written out. Plaintiff always uses "Martinez" as his last name, because that is what his last name is. The name used in the electronic signature on the fraudulently created contract, however, is "Benjamin Nieto," and the initials electronically signed are "B.N." Martinez, not Nieto, is Benjamin's last name. Nieto is his mother's maiden name. Plaintiff's initials are "B.M." and he has never, nor would he ever, initial anything "B.N."

51.     Plaintiff never consented to the use of electronic records to receive all disclosures he was entitled to receive under the law, much less in a manner reasonably demonstrating that he could access the disclosures in an electronic form. Further, Plaintiff did not and could not have intended to sign any agreement with SUNNOVA electronically, since he never knew about the SUNNOVA contract.

52.     Plaintiff never signed any documents electronically. Plaintiff has never seen nor used the Yahoo email address on the contract, martinezbenjamin455@yahoo.com. Nobody in Plaintiff's family had ever seen this email address prior to receiving the alleged SUNNOVA contract for the first time

in June 2023. Upon information and belief, this email address was fraudulently created and used by SUNNOVA and its agents to lock Plaintiff into a contract and loan agreement for which he never agreed and never wanted.[5]

53.     Plaintiff subsequently received a mailing from Greenspire, which is how he learned that they were the company that had come to install the solar panels for SUNNOVA. However, Plaintiff has never received any additional information regarding any alleged Greenspire contract.

54.     After realizing that SUNNOVA and its agents had fraudulently entered Plaintiff into a transaction to which Plaintiff did not agree, Plaintiff attempted to cancel any purported contract(s) with SUNNOVA and Greenspire, including by letter sent certified mail, return receipt requested, dated September 12, 2023. SUNNOVA received this letter on September 27, 2023; Greenspire received it on September 20, 2023. SUNNOVA and Greenspire to date have ignored Plaintiff's request to cancel the fraudulent contract(s) that they contend Plaintiff entered into.

55.     Plaintiff *never signed any type of contract with any Defendant*. Nonetheless, SUNNOVA is relying upon forged electronic signatures coming from an email address to which Plaintiff does not have and never had access to contend that he is contractually obligated to make monthly payments over the next 25 years to pay off a $48,272.37 loan. The contracts that SUNNOVA and its agents forged and SUNNOVA is now attempting to enforce all are SUNNOVA-branded forms that SUNNOVA created and mandated that its sales agents utilize as part of the SUNNOVA program. The forged contracts – all in English – all are titled "Sunnova Home Solar Service Easy Own Equipment Purchase" and include a "Retail Installment And Security Agreement" that sets forth the terms of the fraudulent loan, which SUNNOVA is attempting to enforce. SUNNOVA has

---

[5] In the summer of 2022, Plaintiff's children opened an email account for him for the first time, which was necessary to deal with issues related to Plaintiff's wife's hospitalization, but Plaintiff has never himself used that account and does not know the password. That email account is different than the email account SUNNOVA's agents fraudulently created and used to unlawfully enter Plaintiff into the alleged SUNNOVA contracts.

collected and attempted to collect money from Plaintiff on this fraudulent loan.

56.     Although Plaintiff has previously canceled any alleged contracts, and such contracts are forged, rendering them void *ab initio*, this complaint shall constitute separate notice of the forgeries and the request for cancellation pursuant to the Home Solicitation Sales Act, Civil Code §§1689.7 and 1689(b)(1).

57.     Despite Plaintiff's lawful cancellation of any alleged contract(s) and/or loan agreement(s) and notice of fraudulent activity, which were void *ab initio*, SUNNOVA refuses to acknowledge the lawful rescission and have declined to take any corrective action. Instead, SUNNOVA ratified the fraudulent conduct of Greenspire by refusing to adequately investigate Plaintiff's report of fraud and by continuing to attempt to enforce the contract that was obtained by fraud.

58.     SUNNOVA continues to claim that Plaintiff is bound by contracts he never signed, including by failing to cancel the contract upon receiving Plaintiff's notice of cancellation in September 2023.

59.     SUNNOVA knew, or should have known, that it and its agents and representatives' conduct was likely to cause harm to Plaintiff, an elder adult.

60.     SUNNOVA's actions have had a severe negative effect on Plaintiff and have caused him to suffer non-economic damages including emotional distress, stress, anxiety, and loss of enjoyment of life.

61.     Specifically, Plaintiff has lost hours of sleep every night as he ruminates over SUNNOVA's conduct. He now sleeps far fewer hours each night than he used to because he has a continuous loop of panicked thoughts about how he is going to get out of the alleged debt. Plaintiff ruminates over SUNNOVA's actions daily. He has crying spells because of the stress caused by SUNNOVA.

62.     SUNNOVA's actions are constantly looming over his head. He worries that he is not going to be able to pay for further repairs to his home because he will not have money because SUNNOVA continues to demand payments, and he continues to have to pay Southern California Edison; in fact, he received an annual

Settlement Bill from Southern California Edison dated October 12, 2023 for $1,866.82, which consists of the preceding 12 months of electricity charges that had not been "offset" by the solar panels. Upon information and belief, this bill demonstrates the solar panels are not functioning and have never functioned. SUNNOVA has continued to attempt to collect from Plaintiff notwithstanding the fraudulent contract and that the solar panels have never functioned.

63.    He is confused, helpless, and frustrated because he does not understand how he got into this situation. He feels ignorant and stigmatized for being elderly, not speaking English, and having an elementary school education. He feels like these qualities made him an easy target, and this has caused depression and anxiety, and lower self-worth.

64.    Plaintiff feels humiliated, embarrassed, and swindled, and blames himself for SUNNOVA's actions. He has lost trust in others because he trusted what SUNNOVA's agents told him and was taken advantage of.

65.    Plaintiff feels emasculated and feels like his role in the family has changed. He gets in more arguments with his children because of the pain caused by SUNNOVA.

66.    Plaintiff has lost weight, has suffered from increased blood pressure and gastrointestinal issues, and has constant headaches.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Concealment)
### (On behalf of Plaintiff against SUNNOVA and DOES 1-20)

67.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

68.    SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

69.    SUNNOVA and Greenspire concealed facts in making representations to Plaintiff including but not limited to:

     a)    The fact that SUNNOVA and its agents were selling a solar

installation contract and loan agreement,

b) The fact that SUNNOVA and its agents used Plaintiff's PII to complete a solar installation contract and loan application in Plaintiff's name, and

c) The fact that SUNNOVA and its agents were placing Plaintiff in a solar installation contract with a 25-year loan.

70. SUNNOVA and its agents concealed material information from Plaintiff. As a result of that concealment, Plaintiff has been harmed. SUNNOVA and its agents also made partial statements and half-truths in a situation which required them to make complete and full disclosure of all material facts known to them.

71. SUNNOVA and its agents failed to disclose to Plaintiff complete and accurate information about the matters alleged herein. SUNNOVA and its agents did so despite owing a duty to disclose complete and accurate information to Plaintiff. SUNNOVA and its agents' actions in failing to disclose this information were intentional.

72. Plaintiff was unaware of the true facts that were concealed from him.

73. While Plaintiff never entered into any transaction with SUNNOVA, if Plaintiff had been given full and accurate information, he would have refused to engage in any discussion with SUNNOVA.

74. Plaintiff was harmed by SUNNOVA's concealment. The concealment was a substantial factor in causing harm to Plaintiff.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SECOND CLAIM FOR RELIEF
**(Negligence)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

75. Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

76. SUNNOVA is subject to all claims and defenses that Plaintiff has against

1    Greenspire as the holder in due course.

2    77.    Plaintiff alleges that at all times relevant herein, SUNNOVA acted

3    negligently, carelessly, recklessly and/or unlawfully in representing facts to

4    Plaintiff, failing to disclose complete and accurate information to Plaintiff, and in

5    designing and implementing a program which enables and facilitates unauthorized

6    loans. Specifically, SUNNOVA and its agents acted negligently, carelessly,

7    recklessly and/or unlawfully by:

8        a)    Concealing the fact that SUNNOVA and its agents were selling a
9            solar installation contract and loan agreement,

10       b)    Concealing the fact that SUNNOVA and its agents accessed and
11           intended to use the PII of Plaintiff to submit a loan application for
12           Plaintiff,

13       c)    Concealing the fact that SUNNOVA and its agents were placing
14           Plaintiff in a solar installation contract, and

15       d)    Concealing the fact that SUNNOVA and its agents were placing
16           Plaintiff in a loan agreement.

17   78.    As a direct and legal result of the wrongful acts and/or omissions of

18   SUNNOVA, Plaintiff has been harmed.

19       WHEREFORE, Plaintiff prays for relief as set forth below.

20   ### THIRD CLAIM FOR RELIEF
21   **(Violations of the Consumers Legal Remedies Act, Civil Code §1750, *et seq*.)**
     **(On Behalf of Plaintiff and the General Public Against SUNNOVA and**
22   **DOES 1-20)**

23   79.    Plaintiff realleges and incorporates by reference as though fully set forth

24   herein each and every allegation contained in the preceding paragraphs.

25   80.    SUNNOVA is subject to all claims and defenses that Plaintiff has against

26   Greenspire as the holder in due course.

27   81.    The CLRA was designed and enacted to protect consumers from unfair and

28   deceptive business practices. To this end, the CLRA sets forth a list of unfair and

deceptive acts and practices in Civil Code §1770 that are prohibited in any transaction intended to result in the sale or lease of goods or services to a consumer.

82.    At all relevant times, Plaintiff was a "consumer" within the meaning of the CLRA, Civil Code §1761(d). SUNNOVA and its agents are companies and, as such, are "persons" as that term is defined in California Civil Code §1761(c). The transaction from which this action arises was intended to result in the sale or lease of goods or services to a consumer and are covered by the CLRA.

83.    The acts and practices of SUNNOVA and its agents violated the CLRA and constitute the following unfair methods of competition and unfair or deceptive practices:

a.    Passing off goods or services as those of another in violation of Civil Code §1770(a)(1);

b.    Misrepresenting the source, sponsorship, approval, or certification of goods or services in violation of Civil Code §1770(a)(2);

c.    Misrepresenting the affiliation, connection, or association with or certification by, another in violation of Civil Code §1770(a)(3);

d.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Civil Code §1770(a)(5);

e.    Representing that goods or services are of a particular standard, quality, or grade, in violation of Civil Code §1770(a)(7);

f.    Representing and advertising goods or services with the intent to not sell it as advertised in violation of Civil Code §1770(a)(9);

g.    Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of Civil Code §1770(a)(13);

h.    Representing that a transaction confers or involves rights and

remedies which it does not have or involve, or are prohibited by law in violation of Civil Code §1770(a)(14);

    i.    Representing that the subject of a transaction has been supplied in accordance with a previous transaction when it has not, in violation of Civil Code §1770(a)(16); and

    j.    Misrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction with a consumer, in violation of Civil Code §1770(a)(18).

84.    SUNNOVA and its agents' violations of the CLRA present a continuing threat to Plaintiff and the public in that SUNNOVA and its agents continue to engage in the above-referenced acts and practices.

85.    The acts and practices of SUNNOVA and its agents are willful, inattentional, and approved by managing agents as detailed above. The acts and practice have harmed Plaintiff and Plaintiff is entitled to an award of damages pursuant to Civil Code §1780(a) in an amount to be proven at trial.

86.    At all relevant times, Plaintiff was a senior citizen as that term is defined in Civil Code §1761(f).

87.    Plaintiff has satisfied all statutory notice requirements except as may have been excused by misconduct of SUNNOVA or its agents. This Complaint shall serve as further notice of the statutory violations described therein. SUNNOVA has failed and refused to make restitution or offer Plaintiff adequate correction, repair, relief, or other remedy.

88.    Additionally, SUNNOVA's violations of Civil Code §1770 present a continuing threat to members of the public in that SUNNOVA continues to engage in the alleged practices and has not ceased.

89.    Plaintiff seeks actual damages, an injunction, restitution, punitive damages, statutory damages, and any other relief the court deems proper pursuant to Civil Code §1780(a).

90.     Plaintiff is entitled to statutory damages pursuant to Civil Code §1780(b) due to his status as a senior citizen.

91.     Plaintiff is also entitled to an award of attorneys' fees and costs pursuant to Civil Code §1780(d).

WHEREFORE, Plaintiff prays for relief as set forth below.

**FOURTH CLAIM FOR RELIEF**
**(Violation of the Elder Abuse and Dependent Adult Civil Protection Act,**
**Welfare & Institutions Code §15600, *et seq.*)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

92.     Plaintiff realleges and incorporates by reference as though fully herein each and every allegation contained in the preceding paragraphs.

93.     In addition to its own violations of law, SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

94.   The California Legislature declared that elders are a "disadvantaged class" vulnerable to predatory practices when it enacted the Elder Abuse Act, a state law enforcing the civil rights of the elderly and disabled." Welf. & Inst. §15600. In enacting Elder Abuse Act, the Legislature recognized that elders may be subject to abuse and declared that the State "has a responsibility to protect them" from abuse, including financial abuse.

95.     The 2008 amendments to Elder Abuse Act created a conclusive presumption of financial abuse where a person or entity knew or should have known that their conduct was likely to be harmful to an elder. "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." Welf. & Inst. §15610.30(b).

96.     Plaintiff at all times relevant to the events described herein, was an "elder" adult within the meaning of Welfare & Institutions Code §15610.27 because he is

1   over the age of 65.

2   97.    At all times relevant herein, SUNNOVA actually knew or should have

3   known that Plaintiff was an elder adult.

4   98.    The acts and omissions of SUNNOVA as above alleged constitute financial

5   abuse of an elder adult within the purview and protections of the Welfare &

6   Institutions Code §15610.07 in that they were the proximate cause of the financial

7   abuse or other treatment with resulting physical harm, and pain or mental suffering

8   to Plaintiff. "Mental suffering" as used herein means fear, agitation, confusion,

9   severe depression, or other forms of serious emotional distress that is brought

10  about by forms of intimidating behavior, threats, harassment, or by deceptive acts

11  performed, or false and misleading statements made with malicious intent to cause

12  such mental conditions in an elder or dependent adult.

13  99.    SUNNOVA took undue advantage of the Plaintiff, by misrepresenting and

14  concealing material facts.

15  100.   In doing the acts alleged herein SUNNOVA took, secreted, appropriated, or

16  retained (or else assisted in so taking, secreting, appropriating, or retaining) the

17  property of Plaintiff to a wrongful use, or with the intent to defraud, or both, the

18  property of Plaintiff, thereby causing him to suffer financial abuse.

19  101.   SUNNOVA is engaged in a pattern of financial elder abuse with a conscious

20  disregard for Plaintiff's rights, as well as recklessness, oppression, fraud, or malice in

21  the commission of this abuse as defined by Civil Code §3294.

22  102.   As a direct and legal result of SUNNOVA's violations of the Elder and

23  Dependent Adult Civil Protection Act in their dealings with Plaintiff, Plaintiff has

24  suffered actual, consequential and incidental damages, including without limitation,

25  with respect to Plaintiff's mental suffering and emotional distress. Plaintiff is also

26  entitled to exemplary damages, particularly because SUNNOVA's predatory

27  practices have been directed at especially vulnerable and unsophisticated consumers.

28  103.   Plaintiff continues to suffer damages, the precise amount of which is unknown

1    at the present time; the limitations of Code of Civil Procedure §377.34 do not apply

2    here.

3    104.    In addition to all other remedies provided by law, pursuant to terms of Welfare

4    & Institutions Code §15675.5, Plaintiff is entitled to actual damages and general

5    damages, and all other forms of relief otherwise allowed by law.

6    105.    Plaintiff is also entitled to treble damages under Civil Code §3345 which is

7    calculated as three times the amount that the trier of fact otherwise awards in

8    damages against SUNNOVA for its wrongful conduct.

9    106.    Pursuant to Welfare & Institutions Code §15657.5, Plaintiff is entitled to an

10    award for his reasonable attorneys' fees and costs.

11         WHEREFORE, Plaintiff prays for judgment as set forth below.

12    **FIFTH CLAIM FOR RELIEF**
**(Violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code**
13    **§1788, *et seq.*)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**
14

15    107.    Plaintiff realleges and incorporates herein by reference as though fully set

16    forth herein each and every allegation contained in the preceding paragraphs.

17    108.    The Rosenthal Act was enacted in 1976 to ensure the integrity of our

18    banking and credit industry. Civil Code §1788.1(b). The Legislature found that

19    "unfair or deceptive debt collection practices undermine the public confidence

20    which is essential to the continued functioning of the banking and credit system

21    and sound extensions of credit to consumers." Civil Code §1788.1(a)(1).

22    109.    At all times relevant herein SUNNOVA was and is a "debt collector" within

23    the meaning of Civil Code §1788.2(c). SUNNOVA regularly and in the ordinary

24    course of business, on behalf of itself or others, engages in acts and practices in

25    connection with the collection of consumer debt.

26    110.    The debt which SUNNOVA is attempting to collect from Plaintiff is a

27    "consumer debt" within the meaning of Civil Code §1788.2(f). Plaintiff is a

28    "debtor" within the meaning of Civil Code §1788.2(h) in that he is natural person

1  from whom SUNNOVA sought and continue to seek to collect a consumer debt

2  alleged to be due and owing.

3  111.    SUNNOVA has a non-delegable duty under the Rosenthal Act not to

4  commit violations of the Act, and not to allow its agents to commit such violations,

5  which duty SUNNOVA is prohibited from violating.

6  112.    Since 2022, SUNNOVA has attempted to collect a non-existent debt from

7  Plaintiff. SUNNOVA has contacted Plaintiff by letter and phone, and collected

8  amounts that are not owed as matter of law because Plaintiff never entered into any

9  contract with SUNNOVA, and furthermore lawfully rescinded any alleged

10  contracts. Plaintiff does not owe any amount to SUNNOVA.

11  113.    SUNNOVA made false representations that Plaintiff owed monthly

12  payments to SUNNNOVA even though Plaintiff never had any obligation to

13  SUNNOVA.

14  114.    SUNNOVA has violated the Rosenthal Act. The violations include, but are

15  not limited to the following:

16      a.    SUNNOVA made and used false, deceptive, and misleading

17          representations in an attempt to collect the fraudulent account, in

18          violation of California Civil Code § 1788.17;[6]

19      b.    SUNNOVA misrepresented the character, amount, or legal status of

20          the fraudulent account, in violation of California Civil Code §§

21          1788.13(e) and 1788.17;[7]

22      c.    SUNNOVA misrepresented the compensation which may be lawfully

23          received by SUNNOVA for the collection of the fraudulent account,

24          in violation of California Civil Code §§ 1788.13(e), 1788.14(b), and

25          1788.17;[8]

26      d.    SUNNOVA is attempting to collect the fraudulent account from

27

28

---

[6] 15 U.S.C. §§ 1692e and 1692e(10).
[7] 15 U.S.C. § 1692e(2)(A).
[8] 15 U.S.C. § 1692e(2)(B).

Plaintiff, an action that cannot lawfully be taken, in violation of California Civil Code 1788.13(e) and 1788.17;[9]

e.    SUNNOVA misrepresented that the fraudulent account is lawfully owed by Plaintiff, in violation of California Civil Code § 1788.17;[10]

f.    SUNNOVA is attempting to collect interest, fees, or other charges from Plaintiff that are not expressly authorized by the law agreement creating the fraudulent account or otherwise permitted by law, in violation of California Civil Code §§ 1788.13(e) and 1788.17;[11]

115.    Furthermore, SUNNOVA violated Civ. Code §1788.17, which requires every debt collector collecting or attempting to collect a consumer debt to comply with the provisions of 15 U.S.C. §1692b to §1692j of 15 U.S.C. §1692.

116.    As a proximate result of SUNNOVA'S violations of the Rosenthal Act, Plaintiff suffered damages in amounts to be proven at trial.

117.    Plaintiff is entitled to recover his actual damages pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(1), or in the alternative, Civil Code §1788.30(a), including, but not limited to, damages for his emotional distress.

118.    Plaintiff is also entitled to recover statutory damages pursuant to Civil Code §1788.17, which incorporates by reference the remedies of 15 U.S.C. §1692k(a)(2)(A), or in the alternative, Civil Code §1788.30(b).

119.    Plaintiff is entitled to attorneys' fees and costs pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(3), or in the alternative, Civil Code §1788.30(c).

WHEREFORE, Plaintiff prays for relief as set forth below.

//

//

---

[9] 15 U.S.C. § 1692e(2), 1692e(5) and 1692e(10).
[10] 15 U.S.C. § 1692e, 1692e(5), and 1692e(10).
[11] 15 U.S.C. § 1692f(1).

## SIXTH CLAIM FOR RELIEF
### (Violations of the Home Solicitation Sales Act, Civil Code §1689.5, *et seq.*)
### (On behalf of Plaintiff against SUNNOVA and DOES 1-20)

120.   Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

121.   In addition to its own violations of law, SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

122.   The HSSA was enacted in 1971 to protect California consumers against the type of pressures that arise when a sales agent appears at a buyer's home. Regardless of whether the buyer invites the seller to his/her home, serious pressure arises from the mere fact that the seller may be an intimidating presence once inside the buyer's home. A reluctant buyer can easily walk away from a seller's place of business, but he/she cannot walk away from his/her own home and may find that the only practical way of getting the seller to leave is to agree to buy what the seller is selling.

123.   As a result, the HSSA broadly defines "home solicitation" to mean "any contract, whether single or multiple, or any offer which is subject to approval, for the sale, lease, or rental of goods or services or both, made at other than appropriate trade premises in an amount of twenty-five dollars ($25) or more, including any interest or service charges." Civil Code §1689.5(a). The definition focuses not on who initiated the contact between the buyer and the seller, but on where the contract was made.

124.   Because of these pressures, the HSSA gives the non-senior citizen consumer the right to cancel a home solicitation contract until midnight of the <u>third</u> business day after the buyer receives a signed and dated copy of the contract or offer to purchase that complies with Section 1689.7. Civil Code §1689.6(a)(2). This cancellation right is extended to <u>five</u> days for seniors.

125.   Home solicitation sales contracts must be:

written in the same language, e.g. Spanish, as principally used in the oral sales presentation, shall be dated, shall be signed by the buyer, and . . . shall contain in immediate proximity to the space reserved for the buyer's signature, a conspicuous statement in the size equal to at least 10-point boldface type, as follows:

(B) For all buyers: "You, the buyer, may cancel this transaction at any tie prior to midnight for the third business day after the date of the transaction. See the attached notice of cancellation form for an explanation of this right.

Civil Code §1689.7(a)(1); *see also* Civil Code §1689.7(a)(4).

126.  The precise contents of the notice of cancellation are set forth in the Home Sales Solicitation Act and cannot be modified.

127.  If a seller fails to strictly comply with these notice provisions, the buyer retains the right to cancel the contract until the seller complies with the Home Solicitation Sales Act. Civil Code §1689.7(c). The seller is not entitled to any compensation. Civil Code §§1689.11.

128.  The contract that SUNNOVA seeks to enforce against Plaintiff was purportedly entered into at Plaintiff's home, was not entered into at an "appropriate trade premise," is a contract for "goods" and/or "services" and are regulated by and subject to the HSSA.

129.  Plaintiff exercised his statutory right to cancel any and all contract(s). SUNNOVA contends Plaintiff entered into and hereby further informs SUNNOVA of his cancellation of any such contract(s).

130.  If the buyer cancels, the seller must return anything the buyer paid within ten (10) days of the notice of cancellation.

131.  The buyer must make the goods available to the contractor for twenty (20) days from the date of cancellation. If the seller fails to retrieve the goods, the buyer may keep the goods without further obligation.

132.  SUNNOVA failed to respond to Plaintiff's cancellation of the non-existent contracts. In violation of the Home Sales Solicitation Act, SUNNOVA has denied Plaintiff his statutory right to cancel.

133.   SUNNOVA refused to cancel any contract(s) with Plaintiff. In violation of the HSSA, SUNNOVA has denied Plaintiff his statutory right to cancel.

134.   SUNNOVA violated Civil Code §1689.5, *et seq.* by failing to provide Plaintiff with any fully executed contract signed by Plaintiff and SUNNOVA and its agents, by failing to timely provide Plaintiff with any notice of his five-day right to cancel and by failing to return the amounts collected from Plaintiff within ten (10) days of the date he exercised his statutory right to cancel any contracts SUNNOVA or its agents contend Plaintiff entered into.

135.   Plaintiff received no fully executed contract because he never signed a contract with SUNNOVA, much less a Spanish contract, as Civil Code §1689.7(a)(1) requires.

136.   An actual controversy exists between Plaintiff, on the one hand, and SUNNOVA, on the other hand, concerning their rights and duties under the Home Sales Solicitation Sales Act. This controversy is ripe for adjudication. Plaintiff is entitled to a declaratory judgment adjudicating the rights and duties of the parties under the HSSA.

137.   Plaintiff is entitled to actual or nominal damages pursuant to Civil Code § 3360 for SUNNOVA's violations.

        WHEREFORE, Plaintiff prays for relief as set forth below.

**SEVENTH CLAIM FOR RELIEF**
**(Violation of Business and Professions Code §7150 *et seq.*)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

138.   Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

139.   In addition to its own violations of law, SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

140.   Business and Professions Code §7159(d) requires that "A home improvement contract and any changes to the contract shall be in writing and signed by the parties to the contract prior to the commencement of work covered

by the contract or an applicable change order and, except as provided in paragraph (8) of subdivision (a) of Section 7159.5, shall include or comply with all of the following: (1) The name, business address, and license number of the contractor. (2) If applicable, the name and registration number of the home improvement salesperson that solicited or negotiated the contract."

141.   Business and Professions Code §7159(b) defines "home improvement contract" as "an agreement, whether oral or written, or contained in one or more documents, between a contractor and an owner or between a contractor and a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, if the work is to be performed in, to, or upon the residence or dwelling unit of the tenant, for the performance of a home improvement, as defined in Section 7151, and includes all labor, services, and materials to be furnished and performed thereunder, if the aggregate contract price specified in one or more improvement contracts, including all labor, services, and materials to be furnished by the contractor, exceeds five hundred dollars ($500). "Home improvement contract" also means an agreement, whether oral or written, or contained in one or more documents, between a salesperson, whether or not they are a home improvement salesperson, and an owner or a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, which provides for the sale, installation, or furnishing of home improvement goods or services."

142.   At all times relevant herein, SUNNOVA and its agents were engaged in "home improvement" under Business and Professions Code §7151 and in the sale of "home improvement goods or services" with "goods" and "services" being defined by Civil Code §1689.5.

143.   SUNNOVA alleges the existence of one or more "home improvement contracts" between SUNNOVA and Plaintiff within the meaning of Business and Professions Code §7151.2.

144.    Business and Professions Code §7153(a) specifies that "[i]t is a
misdemeanor for any person to engage in the occupation of salesperson for one or
more home improvement contractors within this state without having, at the time
of the sales transaction, a current and valid home improvement salesperson
registration issued by the registrar" and "[i]t is a misdemeanor for any person to
engage in the occupation of salesperson of home improvement goods or services
within this state without having, at the time of the sales transaction, a current and
valid home improvement salesperson registration issued by the registrar."

145.    Unbeknownst to Plaintiff, the alleged, forged, SUNNOVA contract
contained multiple violations of Bus. & Prof. Code § 7159:

a)    Subdivision (c)(3)(A): The contractor did not give the buyer a copy of
the contract signed and dated by both the buyer and the contract. The
buyer did not receive a copy of the contract that initiates the buyer's
rights to cancel the contract pursuant to sections 1689.5 to 1689.14,
inclusive, of the civil code.

b)    Subdivision (d): The contract was not signed by the parties to the
contract prior to the commencement of the work covered by the
contract or any applicable change order. *Plaintiff did not sign the
contract.*

146.    Pursuant to Business and Professions Code §7161 the following proscribed
acts are considered misdemeanors:

a)    Using false, misleading, or deceptive advertising as an inducement to
enter into any contract for a work of improvement, including, but not
limited to, any home improvement contract, whereby any member of
the public may be misled or injured;

b)    Making any substantial misrepresentation in the procurement of a
contract for a home improvement or other work of improvement or
making any false promise of a character likely to influence, persuade,

or induce any person to enter into the contract; and

    c)    Any fraud in the execution of, or in the material alteration of, any contract, trust deed, mortgage, promissory note, or other document incident to a home improvement transaction or other transaction involving a work of improvement.

147.    SUNNOVA's alleged contract contains a host of other Business and Professions Code §7161 violations not alleged herein which stem from the fact that Plaintiff did not sign or receive the alleged contract at the time SUNNOVA claims he became obligated on it.

148.    Liability for violations of these provisions by a home improvement salesperson extends to the contractor employing him or her. Business and Professions Code §7155.5. Greenspire and its salespersons acted as the agents of SUNNOVA for the purposes of the SUNNOVA Program.

149.    At all times relevant herein, SUNNOVA and its agents were under a duty to follow the law, including Business and Professions Code §§7153, 7159, and 7161. The aforementioned statutes were intended to protect against the type of harm suffered by Plaintiff, a California homeowner targeted by an unscrupulous home improvement salesperson for the sale of home improvement goods and services.

150.    SUNNOVA's agents breached their duty when SUNNOVA'S sales agents made fraudulent misrepresentations including, but not limited to:

    a)    Concealing the fact that SUNNOVA and its agents were selling a solar installation contract and loan agreement,

    b)    Concealing the fact that SUNNOVA and its agents intended to use Plaintiff's PII to submit a loan application for Plaintiff,

    c)    Concealing the fact that SUNNOVA and its agents were placing Plaintiff in a solar installation contract, and

    d)    Concealing the fact that SUNNOVA and its agents were placing Plaintiff in a loan agreement.

151.   SUNNOVA and its agents furthermore breached their duty by submitting a loan application for Plaintiff, placing Plaintiff in a solar installation contract and placing Plaintiff in a loan agreement, all without his knowledge or permission.

152.   As a direct and legal result of the wrongful acts and/or omissions of SUNNOVA, Plaintiff suffered harm.

153.   Business and Professions Code §7160 also creates a private right of action, allowing that "Any person who is induced to contract for a work of improvement, including but not limited to a home improvement, in reliance on false or fraudulent representations or false statements knowingly made, may sue and recover from such contractor or solicitor a penalty of five hundred dollars ($500), plus reasonable attorney's fees, in addition to any damages sustained by him by reason of such statements or representations made by the contractor or solicitor."

154.   Business and Professions Code §7153(b) provides that "Any security interest taken by a contractor, to secure any payment for the performance of any act or conduct described in Section 7151 that occurs on or after January 1, 1995, is unenforceable if the person soliciting the act or contract was not a duly registered salesperson or was not exempt from registration pursuant to Section 7152 at the time the homeowner signs the home improvement contract solicited by the salesperson."

WHEREFORE, Plaintiff prays for relief as set forth below.

### EIGHTH CLAIM FOR RELIEF
**(Violations of Business and Professions Code §17200, *et seq*.)**
**(On behalf of Plaintiff against SUNNOVA and DOES 1-20)**

155.   Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the paragraphs above.

156.   In addition to its own violations of law, SUNNOVA is subject to all claims and defenses that Plaintiff has against Greenspire as the holder in due course.

157.   Plaintiff has standing to bring this claim because he has lost money or property as a result of the acts and practices alleged herein.

158.   The UCL defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice, and prohibits such conduct. Beginning on an exact date unknown to Plaintiff, but at all times relevant herein, SUNNOVA and its agents committed and are continuing to commit acts of unfair competition proscribed by the UCL, including the practices alleged herein.

159.   The business acts of SUNNOVA, as hereinabove alleged, constitute unlawful business practices in that the acts and practices violate Civil Code §1750 *et seq.*; Civil Code §1689.5 *et seq*; Civil Code §1788 *et seq.*; Business and Professions Code §7150 *et seq.* and Welfare & Institutions Code §15610.07, *et seq.*

160.   The business acts of SUNNOVA, as hereinabove alleged also constitute unlawful practices under federal law in at least four respects:

   a) SUNNOVA has engaged in unfair acts and practices with regard to originating loans and servicing loans to customers who did not authorize them in violation of 12 U.S.C. §§5531(a) and 5536(a)(1)(B);

   b) SUNNOVA has engaged in unfair acts and practices by structuring its loan origination and servicing activities in a manner that enables, facilitates and allows unauthorized loans in violation of 12 U.S.C. §§5531(a) and 5536(a)(1)(B);

   c) SUNNOVA has obtained and used consumer reports without a permissible purpose, in violation of the FCRA, 15 U.S.C. §1681b(f); and

   d) SUNNOVA has violated Federal Trade Commission Holder in Due Course rule, 16 C.F.R. §433, *et seq.* by failing to include the requisite holder language it is form contract. By failing to include the requisite language in its form contract, SUNNOVA systematically misleads customers as to the status and the obligations as to their legal rights under the contract.

161.   The business acts and practices of SUNNOVA, as hereinabove alleged,

constitute unfair business practices in that the acts and practices offend public policy and are substantially injurious to consumers. The acts and practices have no utility that outweighs the substantial harm to consumers.

162.   The business acts and practices of SUNNOVA as hereinabove alleged, constitute fraudulent business practices in that the acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations and avoid mandated disclosures; and by use of such deception, induce consumers to enter transactions which they otherwise would decline. The practices alleged are fraudulent and unfair, constituting deceptive practices which were predatory under the circumstances set forth herein.

163.   The unlawful, unfair, and fraudulent business acts and practices described herein present a continuing threat in that SUNNOVA and its agents are currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by the Court.

164.   Pursuant to Business and Professions Code § 17203, Plaintiff seeks a public injunction for the unlawful, unfair, and fraudulent engaged in by SUNNOVA and its agents.

165.   Plaintiff is entitled to restitution of all amounts taken by SUNNOVA and its agents.

166.   Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action under Code of Civil Procedure §1021.5 because:

    a)   A successful outcome in this action will result in the enforcement of important rights affecting the public interest by protecting the general public from unfair, unlawful, and deceptive practices.

    b)   This action will result in a significant public benefit by compelling SUNNOVA to comply with the law.

    c)   Unless this action is prosecuted, SUNNOVA's activities will go unremedied and will continue unabated.

d)      Plaintiff is an individual of modest means with limited access to the courts and the civil justice system. Unless attorneys' fees, costs and expenses are awarded against SUNNOVA, Plaintiff will not recover the full measure of his loss.

WHEREFORE, Plaintiff prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

(1)      An award of actual damages, including but not limited to, emotional distress damages;

(2)      An award of general damages;

(3)      An award of punitive damages;

(4)      An award of statutory damages;

(5)      An award of nominal damages;

(6)      An award of civil penalty;

(7)      An award of restitution;

(8)      An order finding and declaring that any alleged contracts between Plaintiff and SUNNOVA and its agents have been cancelled and are void;

(9)      An order finding and declaring that the solar panels affixed to Plaintiff's home are the property of Plaintiff without obligation to pay for them;

(10)     An order finding and declaring that SUNNOVA's acts and practices challenged herein are unlawful, unfair, and fraudulent;

(11)     A comprehensive public injunction barring SUNNOVA from engaging in the unlawful, unfair, and fraudulent business practices challenged herein and compelling SUNNOVA to conform their conduct to the requirements of the law;

(12)     Prejudgment interest at the maximum legal rate;

(13)     An award of attorneys' fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action; and

//

1    (14)    Any other and further relief as this Court shall deem just and proper.

2    Dated: January 22, 2024                    KEMNITZER, BARRON & KRIEG, LLP

3

4                                        By:    /s/ *Adam J. McNeile*
5                                               ADAM J. MCNEILE
                                                KRISTIN KEMNITZER
6                                               MALACHI J. HASWELL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **JURY TRIAL DEMANDED**

2

Plaintiff demands a trial by jury on all issues so triable.

3

Dated: January 22, 2024                    KEMNITZER, BARRON & KRIEG, LLP

4

5

By:    /s/ *Adam J. McNeile*
          ADAM J. MCNEILE

6

          KRISTIN KEMNITZER
          MALACHI J. HASWELL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28